Howard MORRIS, Administrator of the Estate of Rawlin Morris, Appellant,

v.

CITY OF SOLDOTNA et al., Appellees.

No. 2286.

Supreme Court of Alaska.

July 27, 1976.

Marcus R. Clapp of Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

Sanford M. Gibbs of Hagans, Smith & Brown, Anchorage, for appellees.

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and ERWIN, JJ., and DIMOND, J. pro tem.

ERWIN, Justice.

On May 28, 1972, Rawlin Morris met his death while painting a sewage treatment plant in Soldotna, Alaska. Howard Morris, Rawlin's brother, serving as the administrator of the estate, brought an action for damages pursuant to the Alaska Wrongful Death Act against the City of Soldotna and L. B. Anderson Construction Company, Inc., appellees herein. At the close of the evidence the trial court directed a verdict for appellees, and this appeal followed.

We are presented with three issues in this appeal: (1) were AS 18.60.075 and the provisions of the Alaska General Safety Code applicable in this case; (2) whether the trial court erred in determining that reasonable people could not differ in their judgment as to the appellees' control over the work of Custom Painting, Morris' employer, so as to depart from the general rule that the employer of an independent contractor is not responsible for the negligence of the latter; and (3) did appellees owe any non-delegable duties to Rawlin Morris because of the nature of his work?

In the latter part of July, 1971, the City of Soldotna (hereafter referred to as "City"), and L. B. Anderson Construction Company, Inc. (hereafter referred to as "Anderson"), entered into a contract for the construction of a sewage treatment facility and water storage reservoir for use by Soldotna's municipal residents.

In order to successfully complete the requirements of this agreement, Anderson engaged a number of subcontractors to execute portions of the specialized work that were needed during the project. Anderson subcontracted with Custom Painting Company to do all the necessary painting on the sewage treatment plant. Decedent, Rawlin Morris, was employed by Custom Painting on this project.

On Saturday, May 27, 1972, Morris worked with Ken Cariveau, the owner of Custom Painting, and Douglas Webster, a 16-year old nephew of Cariveau's. On that day Elden Sandvik, Anderson's superintendent on the project, talked with Morris and "discussed the procedure he was going to use to spray epoxy." Morris related to Sandvik that he would proceed to go into the tank for 10 or 15 minutes and then take a break for fresh air for an equal amount of time. Sandvik did not ask Morris if he planned to use some kind of breathing apparatus or ventilation system.

Although the plant was usually closed on Sunday, it was known that Morris planned to paint in the settling tank on that day. Morris and Webster were the only two persons at the work site Sunday morning, and painting began pursuant to the procedure Morris had described to Sandvik the previous day. Webster's job was to man the compressor and remind Morris when it was time for a break. This proceeded until about 10:30 a.m., at which time Morris, who was in the tank, shouted for Webster to turn off the compressor. Morris then began screaming and convulsing, and fell down in approximately two feet of water

at the bottom of the tank. Webster immediately turned off the compressor and climbed into the tank. Upon reaching Morris he lifted him out of the water and heard him mumble incoherently. Webster turned and placed Morris against the ladder, and then he too passed out.

At approximately 3:30 p.m. Leslie Cass, a City employee, arrived on the scene and discovered Webster, apparently unconscious on his feet, hanging onto the ladder, and Morris lying face down in the water at the bottom of the tank. A pathologist subsequently determined that the cause of Morris' death was asphyxiation contributed to by paint fumes and, as a final cause, drowning.

Appellant's first contention in this appeal is that one of the provisions of Alaska's so-called "Safe Place to Work Act," AS 18.60.075,[1] imposed certain affirmative duties on the City and Anderson.

AS 18.60.075 read in pertinent part as follows:[2]

(a) An employer shall

(1) furnish employment which is reasonably safe;

(2) furnish and use safety devices and safeguards;

(3) adopt and use methods and processes reasonably adequate to render the employment or place of employment reasonably safe; and

(4) do every other thing reasonably necessary to protect the life, health, safety and welfare of employees.

In addition, appellant submits that the Alaska General Safety Code was applicable to appellees and thereby imposed certain non-delegable duties. Specifically, he cites § 300–20,[3] which is almost identical in wording to AS 18.60.075, as well as § 304–03 and § 324–05.

Section 304–03 provides in pertinent part that:

(b) Respirators or masks shall be furnished to employees who are exposed to hazardous dusts, gases, fumes or mists, or to atmosphere deficient in oxygen.

. . .

(d) Other personal safety equipment or clothing, such as . . . safety belts, life lines . . . shall be furnished to the employees who are exposed to hazards where such devices may be expected to prevent injury.

Section 324–05 reads in part as follows:

Whenever brush or spray coating operations are performed in any room, vault, bin, vat, hopper, tank or any confined space in which there is no natural ventilation, the employees engaged therein shall be provided with forced ventilation or shall be provided with adequate respiratory protective devices that will protect employees. Life lines or belts shall

---

1. AS 18.60.075 was amended by the Alaska State Legislature subsequent to Rawlin Morris' death.

2. At the time of this litigation the term "employer" was defined in AS 18.80.300(3) as follows: " '[E]mployer' means an employer of one or more persons in the state. . . . ."

3. Section 300.20 comes under the heading GENERAL REQUIREMENTS and provides: 300–20 SAFE PLACE—Every employer shall furnish employment and maintain a place of employment which are safe for the employees therein.

No employer shall require any employee to go or be in any employment or place of employment which is not safe.

No employer shall fail or neglect to:
1. Provide or use safety devices and safeguards.
2. Adopt and use methods and processes reasonably adequate to render the employment and place of employment safe.
3. Do everything reasonably necessary to protect the life and safety of employees.
4. Where any toxic materials are used or stored warning signs will be posted with a white background and red letters not less than 3 inches high.

No employer, owner, or lessee of any property shall construct or cause to be constructed any place of employment that is not safe.
This provision as well as others relied upon by appellant have been revised and renumbered since Morris' death.

not be required if means in ingress and egress from such confined places is by means of a doorway or opening at the floor level measuring not less than six feet vertical height and twenty inches in width.

Without considering the scope of applicability of the statutory and regulatory duties imposed by the Act and Code, we find appellant's reliance upon those provisions misplaced. Morris apparently presumes that once a breach of these statutory and regulatory duties by appellees is established, tort liability flows therefrom as a matter of course. Appellant presumes too much. The Safe Place to Work Act specifically provides for civil penalties, in the form of fines to be imposed by the Commissioner of Labor, and for criminal sanctions.[4] Violations of the regulations enacted pursuant to Section 18.60.020 of the Act can also occasion these sanctions. However, nowhere in either the statute or the regulations can there be found authorization for a claim for relief and award of civil damages to an injured workman for harm resulting from the breach of the Act or General Safety Code. Of course, the fact that a private tort remedy is not specifically created by the terms of the Act is not, by itself, dispositive. In some instances a court may conclude that the legislature has impliedly authorized a private remedy,[5] or that a civil action sounding in tort is necessary to protect fully the person for whose benefit the legislation was enacted.[6]

In this case, however, we think it inappropriate to undertake such judicial expansion of the Safe Place to Work Act or the General Safety Code and would therefore affirm the superior court's exclusion of the Act and Code.

It is important to recognize that appellant's use of the legislation and regulations is very different from the use that we authorized in *Ferrell v. Baxter*, 484 P.2d 250 (Alaska 1971), and subsequent "negligence per se" cases. Those cases allow a trial court to adopt the terms of an applicable statute or regulation as a more precise definition of a previously-recognized common law duty of care. Thus, for example, in the recent case of *Bachner v. Rich*, 554 P. 2d 430 (Alaska, 1976), the plaintiff asserted that defendants owed him a duty to exercise reasonable care to ensure that the scaffold they supplied him was safe for its intended use.[7] There we approve the superior court's decision to adopt certain provisions of the Safe Place to Work Act and the General Safety Code as a more particular articulation of that common law duty owed by the supplier of a chattel. By contrast, in the case at bar appellant has failed to cite any principle of tort law which establishes that either Anderson or the City owed Morris a common law duty of due care.[8] That being the case, the

---

4. AS 18.60.095.

5. *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *cf. Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed. 2d 26 (1975).

6. Restatement (Second) of Torts § 874A (Tentative Draft No. 22) provides:

   (1) Legislation may expressly or impliedly expand or restrict the scope of a particular tort right or remedy.

   (2) In furtherance of the purpose of particular legislation and to assure its effectiveness, a court may, despite the absence of an express or implied provision to this effect, supply a civil action for dam-

ages affording relief to a person for whose benefit conduct of another was either proscribed or required by the legislation.

   (3) This civil action normally sounds in tort, involving either use of an appropriate existing tort or construction of a new right of action analogous to an existing tort.

7. Restatement (Second) of Torts § 392 (1965).

8. Appellant does cite common law principles of vicarious liability, as set forth in Restatement (Second) of Torts §§ 416, 427 (1965), in arguing that Anderson and the City should be held liable for the negligence of Custom,

doctrine of negligence per se is inapplicable.[9]

During the course of the trial below, appellant argued that both appellees exercised a sufficient degree of control over the work of Custom Painting to make them liable for the negligence resulting in Morris' death.

■ We note at the outset that the general rule is that the employer of an independent contractor is not responsible for the negligence of the latter. In *Hobbs v. Mobil Oil Corp.*[10] we observed that this

> rule is justified on the ground that since the employer of an independent contractor has no control over the prosecution of the work, it would be unjust to hold him liable for the torts of another whom he cannot direct. Following this line of reasoning, it would appear that if the employer has retained an element of control over the work, he should be responsible for the harmful consequences of its performance as a concomitant of the control retained. This is the rule of the Restatement (Second) of Torts, where in section 414 it is stated:

> ### Negligence in Exercising Control Retained by Employer

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

> Comment c to the foregoing section states:

>> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.[11]

Appellant attempted to introduce the contracts executed between the City and Anderson and Anderson and Custom Painting in support of his argument that appellees' control was such that a departure from the general rule against liability was warranted. The trial court sustained appellees' objection to the admission of both contracts, ruling that the provisions of the agreements were not relevant to the issues at trial. Based on its review of the evidence adduced at trial, the trial court determined that the appellees were not liable for Morris' death under this theory of liability as a matter of law and thereupon granted their motion for directed verdict.

■ It is a question of fact for the jury to determine whether an employer of an independent contractor retains sufficient control so as to make him liable. In the case at bar the matter was disposed of by

---

the immediate employer of decedent Rawlin Morris. Liability of this type is, of course, not predicated upon a duty running from Anderson or the City directly to Morris. These principles are thus irrelevant to the instant discussion.

9. This distinction between negligence per se and the creation of new private remedies for statutory violations is also recognized in Restatement (Second) of Torts § 874A, comment *f* (Tentative Draft No. 22).

10. 445 P.2d 933 (Alaska 1968).

11. *Id.* at 934–35 (footnotes omitted).

directed verdict for the appellees. As this court recently observed:[12]

> In reviewing a lower court's rulings pertaining to motions for directed verdict we are required to view the evidence in the light most favorable to the non-moving party and to afford him the benefit of all inferences which the evidence fairly supports. Moreover,
>
> > It is well established that the proper role of this court, on review of motions for directed verdict . . ., is not to weigh conflicting evidence or judge the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment. [footnote omitted]
>
> In such cases the appellate court applies an objective test and if there is room for diversity of opinion among reasonable people, then the question is one for the jury to decide. In other words, a jury question, or question of fact, exists whenever it can be said that from the evidence and all reasonable inferences to be drawn therefrom, fair minded people in the exercise of reasonable judgment could reach differing conclusions on the issue in controversy.

Evidence presented at the trial disclosed that both the City and Anderson had an employee at the job site serving in a supervisory capacity; however, as previously noted, neither of these supervisors nor any other employee of appellees directed the work of Custom Painting's employees in any respect. While Anderson's construction superintendent questioned Morris about his painting procedure, he did not instruct Morris that a particular method should be used. We find that the record is devoid of any evidence that appellees actively controlled any aspect of Custom Painting's work.

■ Appellant argues that certain provisions in the contracts, which were found to be irrelevant by the trial court, evidenced a retention of the right to control the work of Custom Painting. Specifically, appellant contends that the contracts between the parties imposed upon appellees certain standards regarding safety. Relying on a recent 5th Circuit case, *Smith v. United States*,[13] it is argued that a retention of the right to control the element of safety on the job is a way of retaining control over the way the work itself is performed.

In *Smith* an employee of a subcontractor brought a suit against Ronlee, Inc., which was the general contractor for the United States, the cause of action based on Section 414 of the Restatement (Second) of Torts. In reviewing the lower court's verdict against Ronlee, the 5th Circuit observed that the "remaining issue is the finding of negligence as to Ronlee based upon the contractual arrangement it had with the government for superintendence of safety at the job site."[14]

Upon reviewing the contract between the United States and Ronlee, the court noted:

> Reasoning from the foregoing, the district court concluded that Ronlee had control over job safety at all material times, that the provisions of the safety manual were violated, and therefore Ronlee was liable to the plaintiffs for negligence.[15]

In affirming the lower court holding, the 5th Circuit made the following observation:

> While there are a large number of reported cases dealing with this particular theory of negligence, few approach the

12. *Teller v. Anchorage Asphalt Paving Co., Inc.*, 545 P.2d 177, 180 (Alaska 1976) (footnotes omitted).

13. 497 F.2d 500 (5th Cir. 1974).

14. *Id.* at 510.

15. *Id.* at 511.

peculiar factual situation presented by this case. Additionally, we have not found any cases which deal with contract provisions obligating the contractor to more than the standard boilerplate "power of inspection" with respect to safety. As we have noted, this contract went beyond that and provided for affirmative duties in connection with safety.[16]

*Smith* is distinguishable from the case at bar in that the contracts between the City and Anderson and Anderson and Custom Painting were much narrower in scope. Our review of the contracts in this case indicate that they contain the standard boilerplate provisions with respect to safety.[17] Unlike *Smith*, the contracts in question did not provide for affirmative duties in connection with safety. Since appellees could not incur a duty to Custom Painting's employees merely by reserving the right to conduct safety inspections or to prescribe safety requirements, we are of the view that the trial court did not err in finding the contracts irrelevant.

Our holding in *Hobbs v. Mobil Oil*,[18] a case cited by appellant, is not inconsistent with our holding in this case. In *Hobbs* we reversed entry of summary judgment for defendant Mobil Oil, which hired an independent contractor, Santa Fe, whose employee was injured on Mobil's drilling platform. This court concluded that there was a genuine factual issue as to whether Mobil Oil retained sufficient control over Santa Fe's operation so as to impose liability on Mobil Oil for an injury resulting from defective stairs on Santa Fe's equipment. In *Hobbs* the contract contained a provision which required Santa Fe to perform the drilling operations and "any other operations, in accordance with Operator's [Mobil's] written programs; and as Operator may direct."[19] Moreover, the evidence showed that one of Mobil Oil's employees actually directed Hobbs on two separate occasions to perform certain work on the platform. These circumstances are not present in the case at bar.

■ Upon reviewing the evidence in a light most favorable to appellant, we find that reasonable people could not differ in their judgment as to whether appellees retained sufficient control so as to make them liable. Thus, a directed verdict was appropriate as to this issue.

Appellant additionally argued at trial that appellees were vicariously liable for Custom Painting's negligence in failing to provide safety equipment for Rawlin Morris. Citing sections 416[20] and 427[21] of the Restatement (Second) of Torts (1965), it is appellant's position that Rawlin Morris' work was inherently dangerous, constituting an exception to the general rule that

---

16. *Id.* at 513.

17. The agreement between the City of Soldotna and Anderson Construction was a form contract provided by the United States Department of Housing and Urban Development which assisted in financing the project. The agreement between Anderson Construction and Custom Painting was a two-page form contract.

18. 445 P.2d 933 (Alaska 1968).

19. *Id.* at 935–36.

20. Restatement (Second) of Torts § 416 provides:

   One who employs an independent contractor to do work which the employer should recognize as likely to produce during its progress a peculiar risk of physical harm to others unless special precautions are

taken, is subject to liability for physical harm caused to them for the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

21. Restatement (Second) of Torts § 427 provides:

   One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to others by the contractor's failure to take reasonable precautions against such danger.

employers of an independent contractor are not liable for the negligent acts or omissions of that contractor.

In order for Rawlin Morris to be excepted from the general rule against liability, appellant was called upon to demonstrate that Morris was within the class of persons protected by the rule and that the work engaged in was inherently dangerous.

This court has never determined whether an employee of an independent contractor falls within the class of persons protected by the rule in question. Nevertheless, the trial court granted appellees' motion for a directed verdict, finding that the theory of liability expressed in section 416 and section 427 protects only third persons, i.e., the public, and not employees of an independent contractor such as Morris.

In a recent opinion on rehearing by this court, *Sloan v. Atlantic Richfield*,[22] 552 P.2d 157, we dealt with the scope of recovery permitted the employee of an independent contractor under common law tort principles. In that case the theory of liability was based on section 422 of the Restatement (Second) of Torts, which provides,

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure (a) while the possessor has retained possession of the land during the progress of the work, or (b) after he has resumed possession of the land upon its completion.

The sole issue on rehearing was whether Sloan, as an employee of an independent contractor, was an "other" under the above language and thus a person to whom ARCO owed a duty.

Upon reviewing the case law in various states, we observed:

we adhere to the rule that the owner of premises or the general contractor thereon owes to the servants of its independent contractors the duty to avoid endangering the employee by his own negligence or affirmative act, but owes no duty to protect the employee from the negligence of the employee's own master. See *Epperly v. City of Seattle*, [65 Wash. 2d 777] 399 P.2d 591, 597 (Wash.1965); *E. L. Jones Constr. Co. v. Noland*, [105 Ariz. 446] 466 P.2d 740, 749 (Ariz.1970). The purpose of the vicarious liability exception is to insure that the employer did not "escape" liability in the sense that no financially responsible party is left available to compensate the injured workman. Under Alaska's system of workmen's compensation, there is by definition a financially responsible party, thus the purpose of vicarious liability has already been served. See *Matanuska Elec. Ass'n v. Johnson*, 386 P.2d 698, 702 (Alaska 1963).[23]

Finding that ARCO's purported liability under the facts was "essentially vicarious," we reasoned that they would not be held responsible and that "Sloan's proper remedy is via the workmen's compensation system."[24]

In our view the distinction between employees at the work site and the general public is particularly appropriate in the context of ultra hazardous activities. Members of the public, whose proximity to danger would be merely coincidental, would probably be unaware of any danger until it struck; hence, there is no way they could adequately protect or insure themselves against harm. Employees at the work site, on the other hand, would possess some knowledge with respect to the nature of the project and thus could choose whether they wished to be exposed to a

22. (Alaska 1976).

23. *Id.* at 160 (citations omitted).

24. *Id.*

dangerous activity. If they did participate in such an endeavor, their rate of pay would usually reflect the risk involved. In addition, they could take steps to avoid injury by acting carefully and would be protected statutorily by employer liability and the workmen's compensation act.

 Following our holding in *Sloan,* we find that because Morris was employed by an independent contractor, appellant's right to recovery cannot be based on any concept rooted in the doctrine of vicarious liability. Our review of the record reveals that any independent negligence in connection with Morris' death was that of Custom Painting. Appellees' purported liability under the facts presented would be vicarious. In light of the foregoing, Morris was not within the class of persons protected under this theory of liability, and the trial court did not err in so ruling.

The order granting a directed verdict in favor of appellees is affirmed.

BURKE, J., not participating.