Kelley Key EVERETTE, Appellant,

v.

ALYESKA PIPELINE SERVICE CO. and Bechtel, Inc., Appellees.

ALYESKA PIPELINE SERVICE CO. and Bechtel, Inc., Cross-Appellants,

v.

Kelley Key EVERETTE, Cross-Appellee.

Alvin L. LANTZ and Odellia Lantz, Appellants,

v.

ALYESKA PIPELINE SERVICE CO., Appellees.

Nos. 4067, 4068 and 4134.

Supreme Court of Alaska.

July 18, 1980.

Theodore R. Dunn, Dunn, Baily & Mason, Anchorage, James A. Parrish, Parrish Law Office, Fairbanks, for appellant/cross-appellee Everette.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellees/cross-appellants Alyeska Pipeline Service Co. and Bechtel, Inc.

James A. Parrish, Parrish Law Office, Fairbanks, for appellants Lantz.

Doris R. Ehrens, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee Alyeska Pipeline Service Co.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER, BURKE, JJ. and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

These cases involve workers who were injured during the course of their employment during the construction of the trans-Alaska pipeline. The workers have sued Alyeska Pipeline Service Co. to recover for their injuries.[1] Alyeska was the agent for

---

1. In one case, the appeal in no. 4067 and the cross-appeal in no. 4068, Bechtel, Inc., was joined as a co-defendant with Alyeska. Prior

to the late spring of 1975, Bechtel was the construction management contractor of the pipeline project. In this position, Bechtel pro-

the oil companies which own the permit authorizing construction of the pipeline. Alyeska, however, did not engage in any construction activity. Instead, it contracted with numerous "execution contractors" to do the actual work. These execution contractors were the direct employers of the injured workers. The contracts between Alyeska and the execution contractors provided that Alyeska would obtain workers' compensation coverage for the in-state employees of the different contractors. With one exception [2] this blanket policy has compensated the injured workers.

The cases each raise the same issue: whether the exclusive liability provision provided in the Workmen's Compensation Act, AS 23.30.055, shields Alyeska from common law tort liability for the injuries of the employees of the execution contractors. We hold that it does not. Because we find Alyeska subject to common law liability, a second issue, raised on appeal only in case no. 4067, must be resolved: what is the extent of Alyeska's common law liability. We hold that Alyeska's liability at common law depends upon factual issues which must be determined by a jury on remand. Because of the similarity of the issues, we have treated these cases in a single opinion.

## I. Facts

### A. *Everette v. Alyeska Pipeline Service Co. & Bechtel Inc.*, Nos. 4067 & 4068

Appellant, Kelley Key Everette, was employed by Price-Potashnick-Codell-Oman (PPCO), a joint venture, one of the execution contractors on the pipeline project. The events leading to Everette's injuries began when fellow PPCO workers were re-beveling a pipe joint. As the re-beveling machine was lowered into place, the machine hit the end of the pipe dislodging it from its skids. The pipe slipped downhill and struck a second pipe, dislodging it as well. Everette was injured when one of the pipejoints pinned him against the pipe upon which he was working.

Everette sued Alyeska Pipeline Co. and Bechtel, Inc., asserting that they were negligent and that their negligence proximately caused his injury. He claimed that Alyeska was under a duty to provide a safe place for plaintiff to work; that Alyeska retained control of safety with respect to pipe installation and was negligent in the exercise of that control; that Alyeska was on notice of the danger of pipe sections "breaking loose from stacks and blocking" and causing serious injury or death; and that Alyeska was negligent in failing to provide proper safety instruction, safety orders, and supervision to prevent injuries such as those received by Everette.

Everette complained that Bechtel was employed by Alyeska "to insure that adequate quality control and safety standards were followed by Alyeska's contractors;" that it was under a duty to Everette to adopt and insure proper safety procedures for securing and blocking sections of pipe; that on the day of the accident it had employees at the accident site who saw or should have seen the improper blocking of pipe sections on the hill, and who knew or should have known of the purported dangerous propensity of such sections to slip; and that Bechtel was negligent in failing to "insure" through its employees, procedures and directives that pipe sections in potentially dangerous situations would be adequately blocked and secured.

Alyeska and Bechtel denied these allegations in their answers and moved for summary judgment. They asserted, first, that the PPCO joint venture was an independent contractor and that they could not be held liable for the injury Everette received in the course of his employment with the joint venture and, second, that the Workmen's Compensation Act provided the exclusive remedy for Everette's injuries.

vided such services as quality and safety control for Alyeska.

**2.** The compensation claim of Alvin L. Lantz in no. 4134 has been disputed by his employer Arctic Construction Co., and as of the date Lantz filed this appeal, he had received no compensation.

On March 28, 1978, the superior court granted summary judgment in favor of Alyeska and Bechtel on the first of these grounds. It found that, because Everette was an employee of an independent contractor, Alyeska and Bechtel owed him no duty of care. The court further found that Alyeska did not assume sufficient control over the stringing of the pipe and related safety procedures to justify a finding of liability. Everette has appealed the superior court's ruling in case no. 4067. The superior court, however, rejected the argument that the Workmen's Compensation Act provided the exclusive remedy for the injuries, and denied summary judgment on that ground. Alyeska and Bechtel have appealed the denial of their motion for summary judgment in case no. 4068 as a protective measure, in the event that the court's ruling that there was no duty of care is reversed.

### B. *Lantz v. Alyeska Pipeline Service Co.*, No. 4134

Appellant Alvin L. Lantz was employed by Arctic Constructors, another one of the execution contractors. On April 5, 1976, and for three days thereafter, he had reported to a physician's assistant, who was employed by Alyeska to provide medical care for pipeline workers, to complain of severe abdominal pain that he was experiencing. Lantz alleges that the physician's assistant failed to refer him to a proper medical facility and as a result he has suffered a ruptured appendix, severe abdominal infection, and a large incisional hernia. Alvin and Odellia Lantz brought a lawsuit against Alyeska alleging that the physician's assistant was negligent and that Alyeska was vicariously liable for the negli-

gent acts of its employee. Alyeska moved for summary judgment on the ground that the action was barred by the exclusive remedy provision in the Workmen's Compensation Act. The superior court ruled that Alyeska was immune from tort liability by reason of the Act and granted the motion.

II. Whether the Exclusive Remedy Provision Provided in the Workmen's Compensation Act, AS 23.30.055 Entitles Alyeska to Immunity From Common Law Liability

To support its claim for immunity, Alyeska initially contends that it is entitled to rely on the exclusive remedy provision provided in Alaska's Workmen's Compensation Act, AS 23.30.055,[3] since under the act it may incur some liability to secure compensation. Alyeska's liability under the Act, if any would result from application of the so-called "contractor-under" clause. This clause is set forth in AS 23.30.045(a) which provides as follows:

> An employer is liable for and shall secure the payment to his employees of the compensation payable under §§ 50, 95, 145, and 180–215 of this chapter. *If the employer is a subcontractor, the contractor is liable for and shall secure the payment of the compensation to employees of the subcontractor unless the subcontractor secures the payment.* [Emphasis added.]

The exclusive liability provision in the Workmen's Compensation Act states in part: "The liability of an employer prescribed in § 45 of this chapter is exclusive and in place of all other liability of the employer and any fellow employee to the employee . . . ." AS 23.30.055.[4]

---

**3.** Summarized simply, "[t]he essence of a workmen's compensation system is that it is a mutual agreement of reciprocal rights between employer and employee, whereby both parties give up and gain certain advantages." *Whitney-Fidalgo Seafoods, Inc. v. Beukers*, 554 P.2d 250, 253 (Alaska 1976). The employees give up their right to recover common law damages from the employer in return for a guaranty of limited compensation under the Act. The employers, on the other hand, in return for liability under the Act, are released from common

law liability for negligence. *Gordon v. Burgess Construction Co.*, 425 P.2d 602, 605 (Alaska 1967).

**4.** AS 23.30.055 states in full:

*Exclusiveness of liability.* The liability of an employer as prescribed in § 45 of this chapter is exclusive and in place of all other liability of the employer and any fellow employee to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover

Alyeska maintains that, because it may be liable to secure compensation under section 45, it is in effect the employer of the injured workers and is therefore entitled to immunity under section 55.

■ We are unable to agree with Alyeska's contention. In order for the "contractor-under" clause to have any application in the case at bar, we must necessarily find that Alyeska was a contractor who employed various subcontractors to perform the actual construction of the pipeline. We do not believe that the requisite contractor-subcontractor relationship was established between Alyeska and the various execution contractors.

Alyeska was the agent for the oil companies which owned the permit authorizing construction of the pipeline; Alyeska did not engage in any construction activities itself. Instead, Alyeska entered into contractual agreements with other contractors to engage in the actual construction of the pipeline. These execution contractors entered into an agreement with Alyeska which stated that the contractor "is, and shall be deemed to be, an independent contractor and not the agent or employee of OWNERS or ALYESKA."

Our finding here is supported by our recent decision in *Hammond v. Bechtel Inc. and Alyeska Pipeline Service Co.*, 606 P.2d 1269 (Alaska 1980). The facts in *Hammond* are very similar to those in the instant case. Hammond was injured while employed by General-Alaska-Stewart, a contractor engaged in construction work on the Trans-Alaska Pipeline. As with the contracts in the case at bar, General-Alaska's contract provided that General-Alaska "is, and shall be deemed to be, an independent contractor and not the agent or employee of OWNERS or ALYESKA." Holding that, as a matter

of law, Bechtel and Alyeska could be held vicariously liable for the actions of General-Alaska, we found that Bechtel and Alyeska "maintained an 'independent contractor' relationship with General-Alaska." *Id.* at 1273.

We are unpersuaded that Alyeska's relationship to the execution contractors should be treated differently here. To do so would not only be inconsistent with our holding in *Hammond*, but would also be inconsistent with our decision in *Thorsheim v. State*, 469 P.2d 383 (Alaska 1970).

In *Thorsheim*, the state, through the Department of Administration, contracted with Harvey's Flying Service to furnish certain specified types of aircraft complete with fuel, pilot and maintenance. Harvey's employee, Stanley Thorsheim, died in an airplane crash while flying an agent of the Department of Fish and Game on a stream survey. Because Harvey's did not maintain compensation coverage, Thorsheim's estate sought compensation benefits from the state arguing that it should be considered a contractor within in the meaning of AS 23.30.045(a). After a discussion of "contractor-under" clauses in other jurisdictions, we defined the term "contractor" as "a person who undertakes, by contract, the performance of certain work for another, including the furnishing of goods and services." We further defined the term "subcontractor" as "a person to whom a contractor sublets all or part of his initial contractual undertaking." *Id.* at 389.

Holding that the Department of Fish and Game and the Department of Administration were not contractors, we stated:

The Department of Fish and Game [and the Department of Administration] acted as an integral part of the State of Alaska; the work of the . . . [Depart-

damages from the employer or fellow employee at law or in admiralty on account of the injury or death. However, if an employer fails to secure payment of compensation as required by this chapter, an injured employee or his legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the employer at law or in

admiralty for damages on account of the injury or death. In that action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

ments] was the work of the state. . . .

. . . The duties of these two departments were set out by constitutional and statutory mandate, and were not arrived at through bargaining between the two departments . . . [B]oth departments acted in their roles as parts of the machinery of state government, and the Department of Administration's obligation to conduct bidding was in no sense contractual.

469 P.2d at 389–90. Despite the above quoted language, we do not believe that evidence of a contractual relationship between Alyeska and the oil companies should in and of itself conclusively determine that Alyeska be regarded as a contractor for purposes of invoking the "contractor-under" clause. In *Thorsheim* we emphasized that "if a person enters into a contract to perform work, he cannot be construed to be a subcontractor unless the duty which he undertakes is at the same time part of a contractual duty of the party with whom he contracted." *Id.*

We do not believe that Alyeska, by entering into contracts with the execution contractors, relegated any of its duties previously undertaken. In the instant case, Alyeska, acting as an integral part of the oil companies, was created for the sole purpose of coordinating the construction of the Trans-Alaskan pipeline. One who acts merely to further the objectives of the owner by obtaining individuals to perform the necessary work rather than undertaking to perform that work himself is more properly

classified as an agent than an independent contractor.

*Thorsheim* is thus clearly on point. Just as the Department of Fish and Game and the Department of Administration were an integral part of the state, so was Alyeska acting as an integral part of the oil companies. And, just as the Department of Administration's duty with respect to the furnishing of flying services was not to provide flying service itself but only to secure flying contracts from outsiders, so Alyeska's duty was not to execute pipeline construction but to select and supervise outsiders who would. We thus reject Alyeska's claim to contractor status.

■ Having determined that Alyeska is not a "contractor" within the meaning of AS 23.30.045, the "contractor-under" clause has no application to the case at bar. Alyeska's claim of immunity under the Workmen's Compensation Act must therefore fall.[5]

On the issue of exclusive liability in the Workmen's Compensation Act, the denial of summary judgment in case no. 4068 is AFFIRMED and the grant of summary judgment in case no. 4134 is REVERSED.

### III. Liability for the Workers' Injuries at Common Law

■ Because we have held that the exclusive liability provision in the Workmen's Compensation Act does not shield Alyeska from common law tort liability, we must reach the issue raised in Everette's

---

5. Alyeska further contends that the "relative nature of the work" test adopted in *Searfus v. Northern Gas Co.*, 472 P.2d 966 (Alaska 1970), provides an additional ground for establishing a statutory employment relationship between Alyeska and Everette. Such a finding, it contends, would provide another means to apply the exclusive remedy provision found in AS 23.30.055. We believe this argument is without merit. The "relative nature of the work" test was designed to differentiate employees from independent contractors. IC A. Larson, The Law of Workmen's Compensation § 43.20, at 8–4 (1978). This test, however, does not prove useful where, as here, the question is not whether Everette is an employee, but whether he can be considered an employee of both

PPCO and Alyeska. We have consistently held that the relationship of employer-employee for the purposes of the Workmen's Compensation Act can only be created by a contract for hire, which may be express or implied. *Whitney-Fidalgo Seafoods, Inc. v. Beukers*, 554 P.2d 250 (Alaska 1976); *Selid Constr. Co. v. Guarantee Ins. Co.*, 355 P.2d 389 (Alaska 1960); AS 23.-30.020. *See also Ruble v. Arctic Gen., Inc.*, 598 P.2d 95 (Alaska 1979). Since no contract for hire existed between Everette and Alyeska, Alyeska cannot be deemed Everette's employer. The exclusive remedy provision provided in the Workmen's Compensation Act therefore has no application to the instant case. *See generally* 1C A. Larson, The Law of Workmen's Compensation § 47.10 (1978).

appeal in no. 4067: what liability, if any, does Alyeska have to employees of its execution contractors under common law. The general rule is that the employer of an independent contractor does not assume a duty of care to employees of the independent contractor. *Morris v. City of Soldotna*, 553 P.2d 474, 478 (Alaska 1976); *Hobbs v. Mobil Oil Corp.*, 445 P.2d 933, 934 (Alaska 1968). But we have adopted the exception to that general rule contained in the Restatement (Second) of Torts § 414 (1965):

> *Negligence in Exercising Control Retained by Employer.* One who entrusts work to an independent contractor, *but who retains the control of any part of the work*, is subject to liability for physical harm *to others* for whose safety the employer owes a duty to exercise reasonable care, *which is caused by his failure to exercise his control with reasonable care.* [Emphasis added.]

*Morris v. City of Soldotna*, 553 P.2d at 478; *Hobbs v. Mobil Oil Corp.*, 445 P.2d at 934. Furthermore, in *Hobbs* we held that employees of independent contractors, such as Everette, are "others," and as such are owed all the common law duties expressed in Restatement (Second) of Torts § 414 (1965). Under this theory, if the employer has retained control over the work it should be responsible for *all* harmful consequences of its negligent exercise of that control. *Id.*[6]

■ If the employer reserves only the right to direct the order of performance, to inspect its progress, or to receive reports, it has probably not retained sufficient control to be subject to liability. *See State v. Morris*, 555 P.2d 1216, 1218 (Alaska 1976); Restatement (Second) of Torts § 414, Comment c (1965).[7] On the other hand, if the employer retains the right to direct the manner of the independent contractor's performance of its work or to superintend the work in any meaningful way, the employer has retained sufficient control to be held liable. Restatement (Torts) Second § 414, Comments b & c (1965). Whether the employer has retained such control is a question of fact which ordinarily should be left to the jury or, in a bench trial, to the judge. *Morris v. City of Soldotna*, 553 P.2d at 479; *Hobbs v. Mobil Oil Corp.*, 445 P.2d at 935.[8]

■ In case no. 4067 the superior court disposed of this question by granting summary judgment in favor of Alyeska. In reviewing Everette's appeal from the summary judgment, we must determine whether the material question of Alyeska's control was genuinely in issue "so that the case should have gone to trial instead of being disposed of summarily." *Hobbs v. Mobil Oil Corp.*, 445 P.2d at 935. *See* Rule 56, Alaska R.Civ.P. In making this determination, we are required to view the evidence in the light most favorable to the non-moving party, Everette, drawing all inferences in his favor. *See Clabaugh v. Bottcher*, 545 P.2d 172, 175 n.5 (Alaska 1976).

---

6. For liability to be imposed, there must be evidence that Alyeska itself was negligent in exercising the retained control. It is not sufficient to base a right of recovery on the doctrine of vicarious liability. In other words, something more than negligence on the part of Everette's employer must be shown. *Morris v. City of Soldotna*, 553 P.2d 474, 481–82 (Alaska 1976); *Sloan v. Atlantic Richfield*, 552 P.2d 157 (Alaska 1976).

7. Comment c of the Restatement (Second) of Torts § 414 (1965) states:

   c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

8. We note that Alyeska may have retained varying degrees of control over each of the different execution contractors. On remand the burden belongs to the worker in each case to show that the control Alyeska retained was sufficient to justify its liability for that worker's injuries.

Everette relies upon job specifications, contract provisions, and a project safety control manual to show the degree of control retained by Alyeska and Bechtel. Reviewing these documents in the light most favorable to Everette tends to show that Alyeska retained sufficient control over the manner of PPCO's performance of its work to justify liability, but that Bechtel did not.

Under the contract with Alyeska, PPCO was obligated to adhere to certain job specifications. These specifications included procedures for handling and stringing the pipe on the pipeline.[9] Everette alleges that Alyeska was aware that prior to his accident other accidents had occurred when pipe had been dislodged from wooden skids after having been strung in accordance with the specifications. No measures were taken to modify the specifications. Everette cites one incident, however, from which it can be inferred that Alyeska did retain responsibility to revise job specifications to ensure worker safety. On one occasion, stacked pipe slipped and killed a worker. The predecessor to Alyeska, Trans-Alaska-Pipeline System, responded to the accident by revising the stacking specifications.

The project safety control manual was apparently published jointly by Alyeska and Bechtel. It stated that Alyeska was responsible for the establishment of a safety program for Bechtel and that Bechtel was responsible to coordinate and control the execution contractors on safety matters.

Alyeska and Bechtel maintain that neither Alyeska nor Bechtel retained control over that aspect of the pipeline work which resulted in the accident and Everette's injuries. They maintain that the job specifications for stringing the pipe were minimal and not intended to preclude PPCO from taking additional safety precautions. The contract, in addition to obligating PPCO to perform according to the job specifications, provided that Alyeska had *no* power to supervise the employees of PPCO. Alyeska also claims that by preparing the project safety control manual it did not retain control over safety and relieve PPCO of its duty to provide for the safety of its employees. It merely retained the power to forbid the work from being done in a dangerous manner, which in itself is not a sufficient degree of retained control to result in liability. *See State v. Morris*, 555 P.2d at 1218, quoting, *Orr v. United States*, 486 F.2d 270, 275 (5th Cir. 1973); Restatement (Second) of Torts § 414, Comment a (1965).

The documents and depositions are contradictory and provide ample evidence in support of both Alyeska's and Everette's positions. As such, they raise a genuine issue of fact on the question of control for the jury. Because a genuine issue of material fact exists in this case, we reverse the superior court's grant of summary judgment in favor of Alyeska.

We affirm the summary judgment, however, as it pertains to Bechtel.[10] Bechtel had relinquished whatever control it had over safety procedures to Alyeska eleven months before Everette's injury. Everette concedes this fact. Thus at the time of the accident, Bechtel did not retain the power to revise job specifications or to control safety procedures. These facts, even when viewed in the light most favorable to Everette, demonstrate that Bechtel did not retain any control which would justify liability.[11]

The summary judgment in case no. 4067 is REVERSED in part and AFFIRMED in part.

---

9. Stringing is the word used to designate the procedure for laying the pipe along the pipeline before it is welded into place. During a welding operation, pipe which had been strung in accordance with Alyeska's specifications slipped and struck Everette.

10. The discussion of vicarious liability has no application to Bechtel since Bechtel is not the employer of an independent contractor here.

Bechtel's common law liability, if any, would rest on whether Bechtel had breached its contractual duty with Alyeska "to exercise coordination and control over the safety plans and activities of the execution contractors."

11. Because we reach this conclusion, we need not reach Bechtel's contention that *it is immune* from common law liability.