Alyss L. MOLOSO, Individually and as Personal Representative of the Estate of Robert E. Moloso, Deceased, and Linda K. Moloso, Individually and as Personal Representative of the Estate of Joseph R. Moloso, Deceased, Appellants/Cross-Appellees,

v.

STATE of Alaska,
Appellee/Cross-Appellant.

Nos. S–116, S–142.

Supreme Court of Alaska.

Jan. 4, 1985.

Barney Jack Chisolm, Barokas & Martin, Anchorage, Gerald J. Moberg, Moses Lake, Wash., for appellants/cross-appellees.

Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for appellee/cross-appellant.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

### I.  FACTUAL AND PROCEDURAL BACKGROUND [1]

This case comes before us for the second time.  It stems from the June 1977 deaths of Robert Moloso and his son, Joseph, caused by a rock slide on the Keystone Canyon portion of the Richardson Highway project.  In *Moloso I* (*Moloso v. State*, 644 P.2d 205 (Alaska 1982)), we reversed a directed verdict granted in favor of the state and remanded for a second trial specifically to determine the state's liability according to three different theories of negligence: Restatement (Second) of Torts § 410 (negligent preparation of plans and specifications subsequently given to the independent contractor); § 413 (negligent failure to provide special precautions); § 414 (negligent exercise of control over the independent contractor).  We concluded then that facts ex-

isted as to each theory from which a reasonable jury could have found a breach of duty owed to the decedents.  *Moloso*, 644 P.2d at 220–21.

On remand, the trial court again directed a verdict on the § 410 claim, based on the state's presentation of new evidence not offered in the first trial.  That ruling is challenged on appeal, as well as various jury instructions concerning § 413 and § 414 claims, and state immunity from liability.  For the reasons stated below, we hold that the directed verdict must again be reversed.  Jury instruction No. 26 regarding immunity misstated the law, constituted prejudicial error and requires remanding the case once again.  We address the other points to guide counsel and the court on re-trial.

### II.  STATE IMMUNITY AND JURY INSTRUCTION NO. 26

The state is immune from liability for its basic policy decisions regarding the adoption or rejection of a project such as the one involved here.  *Industrial Indemnity Co. v. State*, 669 P.2d 561 (Alaska 1983).  The implementation of a policy in a negligent manner—operational negligence—is not similarly shielded.  Once an "affirmative assumption of duty has been made [the state may be liable for] operational negligence in performing that duty." *Id.* at 566 (footnote omitted).  The application of these principles to this case is straightforward.  Once the state decided to build the tunnel by-pass through Keystone Canyon, it had a duty to go about the job using due care.

The facts indicate that the state, having committed itself to the project, sought the advice of geologists, including an independent engineering consultant, C.O. Brawner.  Brawner's investigations revealed that the west slope cliff were susceptible to slides due to the discontinuities running through the rock at about a 60° angle.  To protect

1.  The reader should refer to the text of *Moloso v. State*, 644 P.2d 205 (Alaska 1982), for a more complete statement of the facts.

against the danger of slides, Brawner recommended that

> a "stability inspector" be retained for the project, and that the contract specifications provide for loose rock removal, rock bolting, and excavation on the west bank from the top down ... at about a 60° angle....

*Moloso*, 644 P.2d at 209.

The state awarded the project to a joint venture comprised of Central Construction Co., Manson Construction and Engineering Co., Osberg Construction Co., and Ghemm Company, Inc. (hereafter CMOG). CMOG presented two value engineering proposals designed to cut costs. The state issued change orders to follow the plans of value engineering proposal No. 2 (VE–2). VE–2 included "steeper ... rock excavations on the west slope as compared to the original plan." *Id.* at 210. When the rock excavations began at the steeper angle, the state project engineer issued a stop-work order, fearing slope failure. This order was reversed by the state's senior construction engineer.

■ The Molosos argue that the state may be liable for rejecting Geologist Brawner's advice and adopting VE–2 instead. We agree. Our conclusion rests upon the determination that solicitation of geologists' advice represented a step in the implementation of a previously made decision to build the road. If the state negligently rejected this advice, and such negligence proximately caused the decedents' deaths, the state may be held responsible.

The Molosos argue that jury instruction No. 26 misstates the law of immunity. We agree. Instruction No. 26 provides:

## INSTRUCTION NO. 26

The State of Alaska may not be held liable for injuries or deaths which may result from planning level decisions of the Department of Transportation.

Thus, in planning the Keystone Tunnel By-Pass, the state may have sought the advice of an expert consultant such as a geologist. The state had the discretion to accept or reject that advice in planning the project.

The State of Alaska may, however, be subject to liability for negligence in implementing its planning decision. Therefore, you may only find the state liable for the deaths of Robert E. Moloso and Joseph R. Moloso under these instructions if you find that the state was negligent in implementing the plan but you may not find the state liable for adopting the plan.

The first paragraph of the instruction plainly tells the jury that the state's consideration of a geologist's advice figured into the "basic planning," or adoption phase of the project, and therefore the state could not be liable for rejecting the advice of Brawner. This is wrong. As we stated in *Moloso I:*

> While the decision in the present case to re-route the highway at that particular location rises to the level of a basic policy formulation, *the preparation and alteration of the plans and specifications ... involved merely operational decisions to implement this basic policy. Once the state decided to and did undertake the task of re-routing the highway for better road maintenance, travel, and safety, it was obligated to use due care in its design and construction.*

*Moloso*, 644 P.2d at 218 (emphasis added).

■ Besides being an incorrect statement of the law, instruction No. 26 prejudiced the Molosos because had the jury been permitted to consider the state's rejection of Brawner's advice, it could reasonably have concluded such an omission constituted negligence proximately causing the deaths. The Molosos were entitled to put this evidence before the jury. Instruction No. 26 denied them that opportunity.[2] The

---

2. We further note that the last phrase of the second paragraph of the instruction—"but you may not find the state liable for adopting the plan"—is at best ambiguous and at worst outright wrong. "[A]dopting the plan" could refer to adoption of the VE–2 plan *or* to the initial decision to build a road by-passing the tunnel. We suggest that the problem could be entirely

prejudice resulting from Instruction No. 26 is sufficient in and of itself to reverse and remand. However, we consider it appropriate to address the remaining issues as well.

### III. THE DIRECTED VERDICT ON THE § 410 CLAIM

■ In *Moloso I* we concluded that sufficient evidence had been put before the jury such that reasonable minds could find the state was liable based on a § 410 theory.[3] Accordingly, we reversed the directed verdict and instructed the trial court on remand to present the § 410 theory to the jury. *Moloso*, 644 P.2d at 221. This ruling became the law of the case. "The doctrine of the law of the case prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case." *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 763 (Alaska 1977); *accord Loveless v. State*, 634 P.2d 941, 942 n. 5 (Alaska 1981). Once the Molosos introduced the same evidence regarding § 410 at the second trial—which they did—they should have been shielded from another directed verdict.

■ The trial court, however, directed a verdict again because it found, based on new evidence offered by the state, that there was no evidence that the plans and specifications led to the fatal rock slide. It is true that on remand the evidentiary boundaries are not limited to those of the first trial. *Priest v. Lindig*, 591 P.2d 1299 (Alaska 1979). New evidence may be introduced, or previously introduced evidence may be omitted. Nonetheless, we think our inquiry must focus on the evidence which precluded directing a verdict in *Moloso I*. "In reviewing motions for a directed verdict we must view the evidence in the light most favorable to the non-moving party." *Moloso*, 644 P.2d at 208. The state may have found more information to strengthen its case, but the trial court erred in concentrating on the sufficiency of the state's case and shifting its attention away from the quality of the evidence most favorable to the Molosos, the non-moving party. We adhered to the standards governing directed verdicts in *Moloso I*, and we are compelled to do the same on this appeal. The directed verdict was error and must be reversed.

■ The state argues that the directed verdict did not prejudice the Molosos because they were able to present their § 410 theory in conjunction with § 413.[4] The judge instructed the jury that under § 413 the state could be liable for failing to incorporate special precautions into the contract with CMOG, or for failing to exercise reasonable care to provide for the taking of such special precautions. These instructions correctly stated the substance of § 413. These instructions did not discuss state liability based on CMOG acts or omissions due to orders or directions negligently given by the state, the basis of § 410 liability.

The state argues essentially that § 413 and § 410 are indistinguishable theories of recovery; that the Molosos made the identical arguments under § 413 they would have made under § 410; and that a jury finding of state negligence but no proximate cause under § 413 would have been

---

avoided simply by omitting that phrase from any future instruction.

**3.** Restatement (Second) of Torts § 410 (1965) provides:

> The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.

**4.** Restatement (Second) of Torts § 413 (1965) provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

the same under § 410. Thus, the Molosos suffered no prejudice by virtue of the directed verdict. *See Enslow v. Helmcke*, 26 Wash.App. 101, 611 P.2d 1338, 1341 (1980).[5]

We acknowledge that the nuances of meaning differentiating § 410 and § 413 are subtle. Perhaps, had the instruction on § 413 referred to "negligent orders or directions" as well as "special precautions," both theories might have been encompassed and the state's arguments might have been persuasive. We do not face such a situation. Furthermore, we decline the invitation to treat these two theories identically. Section 413's concern with special risk situations requiring special precautions separates it from § 410's general concern with an employer's negligent orders or directions.

## IV. JURY INSTRUCTIONS 21 & 22

■ The state, as cross-appellant, urges that jury instruction No. 21 improperly broadened the jury's consideration of its contract with CMOG as the contract relates to the § 414 claim. It argues that the same defect taints instruction No. 22 as it relates to the § 413 claim. Specifically, the state claims that interpretation of the contract is a matter of law and the jury therefore should not interpret the document. Stating this general rule, however, does not solve the problem posed by this case. There are times when a contract can be relevant to the resolution of a question of fact, for example the extent to which an employer retained control over subcontractors.

Restatement (Second) of Torts § 414 (1965) provides:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Clearly, the extent to which the state retained control over CMOG and other subcontractors is the crucial question. Jury instruction No. 21 set forth the law regarding § 414, and then provided:

In determining whether or not the state retained sufficient control to subject it to liability, you must consider both the contractual provisions between the state and CMOG, and any actual exercise of control, over the work activities by the state, CMOG and the subcontractor Ferrante as shown by the evidence.

Our decision in *Moloso I* helps resolve this issue. We stated in *Moloso I* that "[i]t is normally a question of fact for the jury to determine whether an employer of an independent contractor has retained sufficient control so as to make the employer liable." *Moloso*, 644 P.2d at 212. We further pointed out that in order "[t]o determine whether the nature and extent of control present is sufficient to impose liability, both *the contractual provisions* and the actual exercise of control are relevant." *Id.* at 211 (emphasis added).

The state cites *Morris v. City of Soldotna*, 553 P.2d 474 (Alaska 1976), as support for the proposition that interpretation of a contract under a § 414 claim is properly a question for the judge. Emphasis on *Morris* is misplaced. In that case we simply upheld the lower court's decision that the contract was irrelevant. That contract contained only boilerplate language regarding safety precautions; significantly, it provided for no affirmative duties owed by the City in connection with safety. *Morris*, 553 P.2d at 480. In such a situation, a judge could reasonably determine that there was no question of fact as to the contract's relevance to retained control.

*Morris* should be contrasted with *Hobbs v. Mobil Oil Corp.*, 445 P.2d 933 (Alaska 1968). In *Hobbs*, the court had to decide whether a genuine factual issue existed regarding Mobil Oil's retention of control over the drilling operations of an indepen-

---

**5.** The court there said: "Instructions given on a party's theory of the case are sufficient if (1) they permit the party to argue his or her theory of the case, (2) they are not misleading, and (3) when read as a whole, they properly inform the trier of fact of the applicable law."

dent contractor. An employee of the independent contractor, Santa Fe Drilling Company, was injured on one of Santa Fe's rigs and sued Mobil Oil. The trial court had granted summary judgment in favor of Mobil.

This court reversed the grant of summary judgment, relying largely on the provisions of the drilling agreement between Mobil and Santa Fe. We concluded that the trier of fact "could find this [that Mobil retained sufficient control to be liable] from the provisions of the drilling agreement. . . ." *Id.* at 936. *Hobbs* is analogous to the present case; *Morris* is fact-specific and not controlling. We conclude that instruction No. 21 contained no error.

■ The state's claims regarding instruction No. 22 can be similarly disposed of. Instruction No. 22 relates to § 413.[6] The relevance of the contract to this claim is readily apparent. The state may be liable for failing to provide in the contract for special precautions. This is a factual question. "The trier of fact could have found that there was a foreseeable risk of harm in this work unless precautions were taken and that the state failed to provide, in the contract or otherwise, for such precautions as reasonably appeared to be called for." *Moloso*, 644 P.2d at 221. The jury examines the contract, not to determine duty since the duty is created by the risk of harm, but rather to determine factually whether the state fulfilled its duty.

Instruction No. 22 provided in pertinent part:

> In determining whether or not the state may be subject to liability under this instruction, you must consider the contractual provisions between the state and CMOG and decide if the state provided for necessary special precautions in the contract by delegating certain safety responsibilities to the contractor CMOG, such that the state's duty was satisfied.

This instruction is consistent with the law. There is no error.

## V. JURY INSTRUCTION NO. 23

■ Instruction No. 23 provides:

> In deciding whether or not the State of Alaska was negligent under Instruction No. 21, or 22, or both, you are hereby instructed that the state, solely by reason of its contract with CMOG, did not undertake any duty to Robert E. Moloso or Joseph R. Moloso.
>
> You are further instructed that the contract between the state and CMOG has been admitted into evidence for the limited purpose of acquainting you with the provisions of the contract, so you can decide whether or not the special provisions were incorporated into the contract for the excavation, blasting and removal of rock on the west bank of the Lowe River, based upon all the contract provisions and other evidence admitted in this case.

The Molosos raise two objections to this instruction. Their first objection concerns the § 414 theory. They argue that the first paragraph is erroneous because the state may have undertaken a duty solely by reason of its contract, i.e., the state may have retained sufficient control by the terms of the contract to constitute an assumed duty. This argument has merit. As we have said, "[w]hether the employer has retained such control is a question of fact which ordinarily should be left to the jury. . . ." *Everette v. Alyeska Pipeline Service Co.*, 614 P.2d 1341, 1347 (Alaska 1980). The instruction deprived the jury of the chance to make that determination under the § 414 theory.

The error, however, appears to have been harmless since the jury did consider the contract and found the state negligent, but also found that the state's negligence did not proximately cause the deaths. On remand, the trial court should correct that portion of the instruction to make it consistent with the law.

■ Second, the Molosos argue that the last paragraph of the instruction impermissibly restricted the jury's consideration of

---

**6.** The text of § 413 appears above, on page 840.

the contract under a § 413 theory. The language is confusing because a juror hearing it might think the contract could *only* be examined to determine whether the state had provided special precautions under a § 413 theory. As the previous discussion demonstrates, the jury can consider the contract to determine whether the state retained control sufficient to impose liability. If there was error, we find it to have been harmless based on the proper instructions given by Nos. 21 and 22 and the jury's finding that the state was negligent. The trial court should clarify the instruction on remand. The contract can be considered for different purposes. When the jury applies the § 413 theory in its deliberations, the contract provisions are relevant to determining whether the state provided special precautions.

## VI. JURY INSTRUCTION 31a

■ The court initially gave jury instruction 31:

A legal cause of loss is a cause which is a substantial factor in bringing about the loss and was so important in bringing about the injury that reasonable men would regard it as a cause and attach responsibility to it.

The jury subsequently requested clarification of the meaning of "substantial factor." The judge gave a supplemental instruction taken from *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972):

Normally, in order to satisfy the substantial factor test it must be shown both that the accident would not have happened "but for" the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable men would regard it as a cause and attach responsibility to it.

The Molosos argue that the "but for" test should not have been used here. The "but for" test "is inapplicable when there are two (or more) forces, *and* each one by itself is sufficient to cause the injury." *Wilson v. City of Kotzebue*, 627 P.2d 623, 630 (Alaska 1981) (emphasis in original). In such a situation, applying the "but for" test would lead to "each force being absolved of liability." *Yukon Equipment, Inc. v. Gordon*, 660 P.2d 428, 433 (Alaska 1983). The Molosos claim that this case involves multiple causation, making the "but for" instruction error. They urge that additional language from *Abbott* should have been included in the supplemental instruction:

There is, however, one significant exception to this concurrence requirement: if two forces are operating to cause the injury, one because of the defendant's negligence and the other not, and each force by itself is sufficient to cause the injury, then the defendant's negligence may be found to be a substantial factor in bringing about the harm.

*Abbott*, 498 P.2d at 727 (footnote omitted).

The flaw in the Molosos' argument is their assumption that this case involves multiple causation. Their case depends ultimately on the state's negligence alone. Even if the rock slide had been caused by CMOG, or a subcontractor, or natural causes, "such a fall would not have caused injury to the Molosos since, had the state not been negligent, the Molosos would not have been working in the area at the time the slope failed." We find that the supplemental instruction was not error.

The instruction should be altered to clarify its meaning for the jury. The word "accident" is misleading because it can refer to both the rock slide *and* the deaths. The jury could have concluded that the rock slide occurred due to natural causes alone. Such a conclusion could have resulted in finding no proximate cause. Assuming for the sake of argument that the slide was naturally caused, had the state been negligent in positioning the men, that act could have been a proximate cause of their deaths. We think that changing the word "accident" to "injury" will guard against this potential confusion on re-trial. *See Wilson v. City of Kotzebue*, 627 P.2d 623, 630 n. 11 (Alaska 1981).

REVERSED and REMANDED.

MOORE, J., not participating.