IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JASON EARL ANDREW NESS, Individually and as Personal Representative of the Estate of BILLY D. MOORE, | No. 86101-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ABB, INC., as successor-in-interest to ITE; A.W. CHESTERTON COMPANY; C.H. MURPHY/CLARK-ULLMAN, INC.; CROWN CORK & SEAL COMPANY, INC.; THE DOW CHEMICAL COMPANY; EATON CORPORATION, individually and as successor-in-interest to EATON ELECTRICAL, INC.; and CUTLER-HAMMER, INC.; GENERAL ELECTRIC COMPANY; GOULD ELECTRONICS INC., f/k/a NIKKO MATERIALS USA, INC. and f/k/a GOULD, INC., successor-in-interest to I-T-E IMPERIAL CORPORATION and I-T-E CIRCUIT BREAKER COMPANY; GOULD PUMPS (IPG), LLC; METALCLAD INSULATION CORPORATION; METROPOLITAN LIFE INSURANCE COMPANY; NIPPON DYNAWAVE PACKAGING COMPANY, LLC; NORTH COAST ELECTRIC COMPANY; OCCIDENTAL CHEMICAL CORPORATION, successor-in-interest to HOOKER CHEMICAL AND DUREZ PLASTICS; PFIZER, INC.; P-G INDUSTRIES, INC., as successor-in-interest to PRYOR GIGGEY CO., INC.; SCHNEIDER | |

ELECTRIC USA, INC., individually and as successor-in-interest to SQUARE D COMPANY; SIEMENS INDUSTRY, INC., individually and as successor-in-interest to SIEMENS ENERGY & AUTOMATION, INC.; SULZER PUMPS (US), INC., formerly known as SULZER BINGHAM PUMPS, INC.; UNION CARBIDE CORPORATION; VIACOMCBS, INC.; WARREN PUMPS, LLC, individually and as successor-in-interest to QUIMBY PUMP COMPANY; WEYERHAEUSER COMPANY, individually and as successor-in-interest to WILLAMETTE INDUSTRIES, INC., R-W PAPER COMPANY and WESTERN KRAFT; WEYERHAEUSER NR COMPANY,

Defendants,

TESORO ALASKA COMPANY LLC, as owner of MARATHON KENAI REFINERY, as successor-in-interest by merger to TESORO REFINERY,

Respondent.

COBURN, J. — Billy Moore's estate sued Tesoro Alaska Company LLC (Tesoro), among others, alleging that Tesoro negligently caused his exposure to asbestos while he was working on Tesoro's oil refinery in Kenai, Alaska. Tesoro moved for summary judgment, asserting that (1) the estate had insufficient evidence to establish exposure or causation, (2) the estate did not establish that Tesoro owed a duty to Moore, and (3) the estate's claim is barred by Alaska's statute of repose. The trial court granted the motion and denied the estate's motion for reconsideration. The estate contends that the trial court erred in granting summary judgment because the estate presented evidence to

2

establish a reasonable inference of asbestos exposure and causation. The estate also asserts its claim is excepted from the statute of repose and that Tesoro owed a duty to Moore as a premises owner.

We agree that, drawing all reasonable inferences in the estate's favor as the nonmoving party, the estate presented evidence to establish genuine issues of material facts as to whether Moore was exposed to asbestos on Tesoro's refinery and whether his exposure caused the development of his mesothelioma illness. We also conclude that questions of fact remain for the jury as to whether Tesoro breached its duty to Moore as a premise owner. Lastly, we conclude that questions of fact remain regarding whether the gross negligence and defective product exceptions to Alaska's 10-year statute of repose apply to the estate's tort action against Tesoro. Accordingly, summary judgment was erroneously granted, and we therefore reverse and remand for trial.

## FACTS AND PROCEDURAL HISTORY[1]

In April 2022 Billy Moore was diagnosed with mesothelioma. In May he sued 25 defendants, including Tesoro, alleging that his illness was caused by defendants' negligent conduct that exposed him to asbestos during his electrical and welding work on commercial and industrial jobsites. In July Moore died from malignant mesothelioma.[2] His estate subsequently refiled the lawsuit.

---

[1] On July 29, 2024, Tesoro filed a motion in part to "exclude" certain items from the clerk's papers on review under RAP 9.12. A commissioner of this court referred the motion to exclude to this panel and informed Tesoro that it may file an amended brief to include argument on the issue, which Tesoro did not do. Because Tesoro effectively abandoned the issue, we need not address it further.

[2] "Malignant mesothelioma results from neoplastic transformation and uncontrolled growth of mesothelial lining cells." It is well-known that asbestos can cause malignant mesothelioma. "The relationship between asbestos and mesothelioma is so strong that some consider mesothelioma a 'signal' or 'sentinel' tumor. There is wide agreement that when mesothelioma is seen, asbestos exposure will likely have

Specific to Tesoro, Moore testified he performed electrical and welding work at Tesoro's Kenai refinery[3] in 1980 and 1981. Moore was employed by a third-party contractor[4] and worked on the refinery's hydrocracker[5] project. Most of his work was outside. Moore testified there were Tesoro employees at his jobsite, walking around, "looking the job over, [and] making sure it's done the way it's supposed to be done." Tesoro had safety rules and if a contractor was not following the rules, Tesoro would fire them.

Insulators and pipefitters also worked at Moore's jobsite. Moore explained that "piping on the outside of the [hydrocracker] vessels" "had to be covered with insulation." Moore observed insulators installing insulation on the hydrocracker and removing it from the hydrocracker's pipes. When asked who the insulators worked for, Moore answered, "I assume the same company I worked for." Moore testified that he would be "on the ground below" insulators when they were removing or replacing insulation and that the insulators' work created dust for him. Moore did not know whether the insulation installed or removed by the insulators contained asbestos. No efforts were made to isolate Moore from the insulation, and he was not aware of any warnings about asbestos hazards during his work at the refinery.

---

previously occurred, or conversely, when asbestos exposure has occurred, there is significant relative risk of later mesothelioma."

[3] Hereinafter, we refer to Tesoro's Kenai refinery as "the refinery."

[4] Tesoro asserts in its briefing that Moore admitted he was unaware of any contract between Tesoro and his employer. However, the part of the record Tesoro cites to states that "[p]laintiff admits to being unaware of any contract between Billy Moore and Tesoro." Tesoro provides no other support for its assertion. See RAP 10.3(b).

[5] A hydrocracker is a type of reactor used to distill petroleum products; hydrocracker is a term used for the operating unit that the reactor exists within.

The estate also offered testimony from Mickey Endsley,[6] who worked as an insulator at the refinery in the 1980s.[7] At the time Endsley worked for Inlet Insulation Company, which had a contract to perform maintenance work at the refinery. Endsley testified the Inlet employees were told by Tesoro the "places that they wanted insulation done, or insulation repaired."

Endsley testified Tesoro owned "[a] lot" of asbestos-containing insulation that was "[s]tored in shanties" on "the backside of the [refinery]" and that Tesoro knew the asbestos material was at the refinery. During his work with Inlet at the refinery, Endsley and the other insulators were "told by the man who was over maintenance in the Tesoro plant that if we needed any insulation to go out there to the shanties, make sure we went through those first before we ordered any new materials." Endsley testified that generally when people have a lot of materials left over after doing a job, they store it so they do not have to buy new materials if they need it for other work. "And you always got maintenance work going on in a refinery, and people using it up." When asked what he did with the asbestos insulation when he used it at the refinery, Endsley said he

> A     … [i]nstalled them on the lines where we was … repairing work or whatever we was doing. Our instruction was to use up what materials was around there and if we didn't find the sizes we needed, then we'd order and by [sic] new materials.
> Q     And who instructed you to do that?
> A     …. For Inlet Insulation Company it came from Ken Seiner who was over maintenance. … I worked for Tesoro direct and they would tell us where to go get the materials, … and if we couldn't find the materials, then come see them and they'd order some materials.

---

[6] Endsley's deposition was taken in 1998 as part of unrelated litigation of which Tesoro also was a defendant.

[7] There is some variation in Endsley's testimony as to when he conducted work for Inlet Insulation Company at the refinery. We read the record in the light most favorable to the estate as the non-moving party. Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 220, 522 P.3d 80 (2022).

Endsley explained that insulators were "assigned a place to go to work, then they order their material or get their material and they'd do their job." Pipefitters also were in the vicinity of insulators when they were installing asbestos products at the refinery.

Tesoro's corporate witness Scott Rosin testified it was "[p]retty common to store insulation" and that the refinery was still under production when the hydrocracker was being built in 1980 and 1981. A 2011 sampling test detected asbestos in the fireproofing[8] on the structural steel I-beams of the hydrocracker. Although most of the asbestos-containing pipe insulation from its original construction remains, Rosin said there has not been any quantification of the amount of asbestos-containing material that remains at the refinery. Asbestos materials at the time of the refinery's construction included those used for pipe insulation, fireproofing, gaskets, and packing. Rosin was not aware of any diagrams or surveys that identified asbestos-containing materials in the refinery. Rosin explained:

> A  It would – it would be almost impossible to – to get that level of detail without tearing every piece of equipment apart and testing every gasket or packing. It just – it'd be almost impossible.
> Q  And is that just because there's so much asbestos there?
> A  There's so much opportunity more than anything. You can't assume if you test in one location on a pipe that that material is – is the same two inches down the pipe or 20 feet down the pipe.

It is undisputed that the Environmental Protection Agency (EPA) banned the installation of asbestos pipe and block insulation in 1975. Rosin agreed that if asbestos insulation was installed at the refinery it was federally banned and exposed employees were not provided with protective equipment, it would be a major departure from the

---

[8] Rosin testified that fireproofing was a "mastic-type material" on the structural steel of the hydrocracker. The fireproofing looks "like a stucco house" and has "some profile to it," which makes it discernible from "bare steel."

standard of care that Tesoro would otherwise hold itself to.[9]

Rosin also testified to the responsibility Tesoro assumed for the safety of employees and contractors. The estate's counsel questioned Rosin:

> Q      And keeping employees and … contractors safe is a responsibility that Tesoro takes seriously; is it not?
> ….
> A      Yeah. We … want everybody to go home safe at the end of the day.
> …
> Q      Of course. And that was true in the 1980s as well, correct?
> ….
> A      I would assume very much true.
> …
> Q      In the 1980s during the construction of the hydrocracker did Tesoro maintain responsibility for ensuring that throughout the premises safety regulations were being followed and adhered too[sic]?
> …
> A      Yeah. I think that's … a difficult one to – I mean, you can ask it and you can hope for it. At the end of the day people's individual choices and the contractors that we hire, … they've got to be on the same page that we do.
>
> ….
> Q      Okay. If … in the 1980s, as today, if Tesoro had – its contractors were not on the same page regarding safety, Tesoro would take the matter seriously and seek to ensure that the contractor got on the right page, true?
> ….
> A      Yes. For contractors that we hire directly, that's true.
> …      Q      Okay. And how about for contractors you hire indirectly? And – and can you share with me kind of the distinction that you're drawing between those two?
> ….
> A      In my tenure, and this is probably not just unique to refining, a lot of times when you have a big job you'll hire a general contractor who then goes out and … secures subcontractors to support whatever the scope of work is.
> And … in the various things that I've seen at our refinery sometimes those operate in their – a green-field-type atmosphere, but at the end of the day we still hold ourselves accountable for safety of everyone that's on site.

---

[9] Rosin stated that none of the insulation currently stored at the refinery contains asbestos because it was purchased over the last 20 years.

In its response to interrogatories, Tesoro stated it was unknown when its general contactors or subcontractors stopped using asbestos-containing products on its projects.

Additionally, the estate offered expert testimony from Dr. William Longo, who opined that Moore would be exposed to asbestos if insulation was being replaced or removed above him as Moore described in his testimony. According to Dr. Longo, depending on the air movement conditions, Moore could have had significant asbestos exposure up to 200 feet away from the location where the asbestos insulation was being replaced or removed.

The estate's other expert witness Dr. Steven Haber submitted a declaration stating that "[a]sbestos is a well-known cause of malignant mesothelioma" and mesothelioma, along with other adverse health effects of asbestos,[10] has a "long latency period[] and a cumulative dose-response relationship." "The occurrence of disease also depends upon individual susceptibility." Dr. Haber defined asbestos as a toxin and stated that "all asbestos fiber types are capable of inducing DNA damage." "The carcinogenic risks apply to all fiber types wherever they are found."

Dr. Haber stated that in the United States, asbestos is the primary cause of malignant mesothelioma and the only established environmental cause of mesothelioma. Dr. Haber opined that "the causal relationship between asbestos exposure and the development of mesothelioma is so firmly established in the medical and scientific literature that it is accepted as fact." There is no level of asbestos exposure that is completely safe; mesothelioma can result from even brief, indirect, or

---

[10] Including asbestosis, asbestos-related pleural disease, and lung cancer.

low levels of asbestos exposure.

Dr. Haber explained that "scientists and physicians will categorize exposure in terms of (1) job class (for example, 'insulation worker' or 'pipefitter'), (2) qualitative assessment (based on the nature, regularity, proximity, duration, and intensity of exposure), or (3) dose range estimates (based on comparisons to measurements from like exposures)." "It is generally accepted in the scientific community that visible dust from asbestos-containing products or material contains large amounts of asbestos fibers that greatly exceed background ambient levels." Once inhaled, asbestos fibers cause injury to the cells and genetic alterations that eventually produce malignant mesothelioma. While asbestos acts in a cumulative and dose-dependent manner to cause mesothelioma, relatively low-dose exposures can increase the risk for mesothelioma. Dr. Haber stated that physicians determine the cause(s) of mesothelioma based on "the qualitative history of asbestos exposure and not upon a quantitative dose analysis of that exposure." In regard to the question of Moore's exposure, Dr. Haber stated:

> I have been asked to assume that the insulation at … the Tesoro Refinery during the time Mr. Moore worked at the[] facilit[y] contained asbestos and that Mr. Moore worked in areas that had this asbestos-containing insulation. …. I am also generally aware of the asbestos content in electrical components, gaskets and packing for pumps, and the insulation used in … refineries during the time-frame applicable to Mr. Moore.
> ….
> Mr. Moore's malignant mesothelioma was caused by his cumulative occupational exposures to asbestos. These constituted a significant and substantial factor in the development of his malignant mesothelioma, considering the onset, duration, frequency, regularity, intensity, nature, and proximity of exposures.
> ….
> Mr. Moore had regular and repetitive asbestos exposures while working at Tesoro Refinery in Alaska. He likely inhaled substantial quantities of asbestos fibers at this job site. Even if not his sole source of exposure, this

was a significant and substantial exposure source, considering the onset, duration, frequency, regularity, intensity, and proximity of exposures. Therefore, his asbestos exposures while working at Tesoro Refinery were a substantial contributing factor in causing his malignant mesothelioma.

Tesoro moved for summary judgment and to exclude inadmissible anticipated evidence. The estate filed a response. Tesoro subsequently filed supplemental material with its reply brief in support of its summary judgment motion and motion to exclude evidence. In response, the estate filed supplemental materials. The trial court granted summary judgment to Tesoro and denied the estate's motion for reconsideration. The estate appeals.

DISCUSSION

Standard of Review

We review summary judgments de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is appropriate when "'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" Id. (alteration in original) (internal quotation marks omitted) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)); CR 56(c). We must accept the nonmoving party's evidence as true and construe all facts and reasonable inferences in the nonmoving party's favor. Fairbanks v. J.B. McLoughlin Co., 131 Wn.2d 96, 101, 929 P.2d 433 (1997); Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014).

The summary judgment process follows a burden-shifting scheme. Welch v. Brand Insulations, Inc., 27 Wn. App. 2d 110, 114, 531 P.3d 265 (2023). The moving party has the initial burden to present uncontroverted facts to establish there is no genuine issue of material fact. Id. at 115. If this burden is satisfied, it shifts to the

10

nonmoving party to "'set forth specific facts evidencing a genuine issue of material fact for trial.'" Id. (quoting Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995)). Summary judgment is appropriate only where a trial would be useless. Wheeler v. Ronald Sewer Dist., 58 Wn.2d 444, 446, 364 P.2d 30 (1961).

A trial is not useless and necessary where there is a genuine dispute as to any material fact. Id. "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). An inference is reasonable where it is a logical conclusion or deduction based on established facts or circumstances. Fairbanks, 131 Wn.2d at 101-02. "When the evidence at summary judgment is susceptible to competing reasonable inferences, some supporting liability and others not, a fact question is presented that a jury must determine." Asphy v. State, 31 Wn. App. 2d 605, 630, 552 P.3d 325, review denied, 559 P.3d 1023 (2024).

Exposure and Causation

Under Alaska common law,[11] a prima facie negligence claim requires a plaintiff to offer evidence to establish the elements of duty, breach of duty, causation, and harm. Lindsey v. E & E Auto. & Tire Serv., Inc., 241 P.3d 880, 885 (Alaska 2010); Culliton v. Hope Cmty. Res., Inc., 491 P.3d 1088, 1096 (Alaska 2021). Where the factfinder could determine that two or more negligent forces were each individually sufficient to cause a plaintiff's harm, the plaintiff must establish the defendant's negligence was a substantial factor, or proximate cause, in bringing about the harm. Vincent ex rel. Staton v. Fairbanks Mem'l Hosp., 862 P.2d 847, 851-52 (Alaska 1993).

_____

[11] The parties do not dispute that substantive Alaska law applies on appeal.

11

Generally, Alaska's substantial factor test requires a plaintiff to establish actual and proximate cause; that is, (1) the harm would not have occurred but for the defendant's negligence, and (2) the defendant's negligence was a substantial factor in bringing about the harm. Id.; State v. Abbott, 498 P.2d 712, 727 (Alaska 1972). But in cases where a plaintiff's harm may be attributed to two or more concurring forces, the former "'but for' [actual cause] test should not be used, as it could result in 'each force being absolved of liability.'" Vincent, 862 P.2d at 851 (quoting Wilson v. City of Kotzebue, 627 P.2d 623, 630 (Alaska 1981)). Thus, in such cases the causation inquiry focuses on whether the defendant's conduct was a substantial factor in causing the plaintiff's injury. See id at 851-52. It is not necessary that a defendant's conduct be the overriding substantial factor, but only a substantial factor. Shea v. State, 267 P.3d 624, 631-32 (Alaska 2011). "It [is] proper to find that a defendant's negligent conduct was the 'legal cause' of plaintiff's injury if the negligent act 'was more likely than not a substantial factor in bringing about (plaintiff's) injury.'" Abbott, 498 P.2d at 726 (emphasis added) (quoting City of Fairbanks v. Nesbett, 432 P.2d 607, 610 (Alaska 1967)).

This appeal specific to the estate's negligence claim against Tesoro stems from Moore's multi-exposure lawsuit against 25 different defendants across several states, alleging that the negligence of certain product manufacturers, product suppliers, and premises owners like Tesoro each independently contributed to the development of Moore's mesothelioma disease. The parties do not dispute that the substantial factor test applies to this multi-exposure lawsuit.

As a foundational factual challenge, Tesoro argues that the estate cannot establish asbestos exposure to support its contention that Moore's exposure at the

refinery was a substantial factor in the development of his mesothelioma. Tesoro asserts the estate has not presented "specific" evidence to show that Moore was exposed to asbestos-containing insulation when he worked the refinery's hydrocracker in the early 1980s. Tesoro argues that the mere presence of asbestos-containing insulation "somewhere" in the refinery "does not equate to Moore's exposure to respirable asbestos fibers" from disturbed asbestos insulation.

The estate concedes it has no direct evidence to establish Moore's asbestos exposure. The estate instead argues that, beyond the mere presence of asbestos at the refinery, circumstantial evidence of Tesoro's policy for insulators to first use asbestos insulation stored at the refinery at the time the hydrocracker was being built supports the reasonable inference that the insulation dust around Moore contained asbestos.

The record before us presents a close call on the question of Moore's exposure. When reviewing an order of summary judgment, we must resolve all reasonable inferences from the evidence against the moving party and affirm summary judgment only if reasonable people could reach but one conclusion. Ford v. Hagel, 83 Wn. App. 318, 321-22, 920 P.2d 260 (1996). In doing so, we conclude that the trier of fact could reasonably infer from the circumstantial evidence that Moore was exposed to asbestos during his work at the refinery in the early 1980s.

Although proximate cause generally involves questions of fact left to the jury, it becomes a matter of law where reasonable minds cannot differ that the connection between the alleged conduct and harm is too uncertain or remote to be foreseeable. Turnbull v. LaRose, 702 P.2d 1331, 1337 (Alaska 1985); P.G. v. State, 4 P.3d 326, 334 (Alaska 2000); Sharp v. Fairbanks N. Star Borough, 569 P.2d 178, 183-84 (Alaska

13

1977). A plaintiff's evidence may be circumstantial, <u>Hinman v. Sobocienski</u>, 808 P.2d 820, 823 (Alaska 1991), but any evidence showing causation cannot be "'too conclusory, too speculative, or too incredible to be believed.'" <u>Culliton</u>, 491 P.3d at 1096 (quoting <u>Christensen v. Alaska Sales & Servs., Inc.</u>, 335 P.3d 514, 516 (Alaska 2014)). "A mere possibility of causation is not enough." <u>City of Fairbanks v. Schaible</u>, 375 P.2d 201, 204 (Alaska 1962), <u>overruled on other grounds by</u> <u>Scheele v. City of Anchorage</u>, 385 P.2d 582 (Alaska 1963).

Here, viewing the evidence in light most favorable to the estate, Endsley installed insulation at the refinery at the same time that Moore worked at the refinery in the early 1980s. Endsley testified his employer, Inlet Insulation Company, had a maintenance contract with Tesoro. Endsley testified that a Tesoro employee in charge of maintenance, Ken Seiner, directed Inlet employees where to install or repair insulation, and to first use the asbestos insulation stored at the refinery before ordering new insulation. Endsley said there was "[a] lot" of asbestos insulation stored at the refinery. He believed it was stored so Tesoro could avoid ordering new product to save money. Endsley testified the stored asbestos insulation was "always" being used for maintenance projects.

Tesoro presented no evidence to controvert its purported policy to first use its stored asbestos insulation before ordering new product during the time that Moore worked at the refinery. Nor did Tesoro present evidence to conclusively establish that only new insulation purchased after the EPA's ban of asbestos pipe and block insulation in 1975 was used for the hydrocracker when Moore worked on it. Based on these facts, it is reasonable for the trier of fact to infer that the insulation being used by insulators

14

above Moore and exposing him to dust contained asbestos.

Tesoro maintains its argument on appeal that Endsley's testimony regarding Tesoro's direction to first use the stored asbestos insulation should not be considered as part of the estate's evidence against summary judgment because it is inadmissible hearsay. Tesoro's argument is without merit. Because Endsley directly observed the stored asbestos insulation, and the purported instructions to use the asbestos insulation were commands and not beliefs, Endsley's testimony does not constitute hearsay.[12] See ER 801(c); State v. Powell, 126 Wn.2d 244, 265, 893 P.2d 615 (1995); State v. Carte, 27 Wn. App. 2d 861, 878, 534 P.3d 378 (2023), review denied, 2 Wn.3d 1017, 542 P.3d 569 (2024).[13]

Next, Tesoro avers that the estate failed to present evidence to establish that Moore's exposure at the refinery was a substantial factor in the development of his illness. We disagree.

A defendant's negligent conduct is a substantial factor if it was so important in bringing about the harm that reasonable persons would consider it a cause and attach responsibility to it. Abbott, 498 P.2d at 727. A medical expert's opinion is required to

---

[12] Tesoro also argues this court should not consider as part of the record on appeal the depositions of four other witnesses, Robert Blackard, Lester Borgen, Charles Talbert, and Salvatore Pisciotta, taken as part of unrelated litigation that involved Tesoro as a defendant. Tesoro avers these testimonies are inadmissible hearsay and the depositions, including Endsley's, are impermissibly unsigned by the deponent or certified court officer. See ER 801, 804(b); CR 30(e). Except for the hearsay challenge to Endsley's testimony addressed above, Tesoro did not make such arguments below and does not otherwise reference the record to indicate that it did. See RAP 10.3(a)(5), 10.4(f). Accordingly, these arguments are waived. RAP 2.5(a).

[13] Tesoro asserts in its briefing that evidentiary issues are governed by Alaska law where there are conflicts or where evidentiary rules affect substantive rights. Because Tesoro does not explain how this pertains to the evidentiary rules relevant to our decision, we defer to the basic principle that evidentiary rules are procedural and cite to Washington law accordingly. See State v. Superior Ct. for King County, 148 Wash. 1, 14, 267 P. 770 (1928); Woodward v. Taylor, 184 Wn.2d 911, 917, 366 P.3d 432 (2016).

establish the connection between the defendant's conduct and the plaintiff's harm if not readily apparent based on a lay person's ordinary everyday experience. Culliton, 491 P.3d at 1097.

The Alaska Supreme Court's decision in City of Fairbanks v. Schaible, 375 P.2d at 204, provides a helpful distinction to the instant matter, wherein the court held in a wrongful death suit that the lower court's finding of causation was clearly erroneous. Schaible died from asphyxia during a fire in her apartment building that was started when a child lit a box of trash on the second floor. Id. at 203. The trial court found that Schaible's executor established that smoke emitting from a damaged venting system in an apartment building was the smoke that caused the decedent's asphyxiation. Id. at 204. The executor argued there was a clear inference that heat and fire caused ducts in the apartment's ventilation system to explode, which caused smoke to discharge into Schaible's apartment. Id.

A contractor witness who observed the charred and broken ventilation ducts after the fire testified that the damage must have been caused by an internal explosion in the ventilating system. Id. at 203-04. However, the court observed that the contractor did not offer an expert opinion regarding fires or the likelihood of smoke being forced through the ducts into Schaible's apartment as a result of an explosion within the ventilating system. Id. at 204. The contractor "did not even specify where the explosion took place" and there was no testimony that smoke came out of the vents in any of the apartments. Id. The Alaska Supreme Court held,

> It is nothing more than supposition to conclude that an explosion within the ventilating system at some undesignated location in the building caused smoke to travel through the ducts into Mrs. Schalible's [sic] apartment, and that this was the smoke observed from outside the building which

16

apparently caused her death.

Id. The court concluded it was as equally possible that the smoke came from the hallway through Schaible's doorway based on witnesses' observations that the fire burned the plywood wainscoting that lined the walls going up to the third floor where Schaible's apartment was located and that smoke was coming from the hallway into her apartment around the sides of her door. Id. Thus, the court held that the executor did not meet its burden to prove that the ventilating system was more likely than not a substantial factor in Schaible's death. Id. at 203-04.

In the instant case, the estate offered expert testimony that Moore's exposure to asbestos dust during his work on the refinery's hydrocracker was a substantial factor in the development of his mesothelioma. The estate offered expert testimony from Dr. Longo that Moore would have been exposed to asbestos based on his description of insulators' work creating dust for him as he worked below them. The estate's other expert witness Dr. Haber opined that dust from asbestos products contains large amounts of asbestos fibers. Assuming the insulation used near Moore contained asbestos, Dr. Haber opined that Moore's repeated and regular exposure to asbestos at the refinery was a substantial factor in causing his mesothelioma.

Tesoro argues that Dr. Haber's opinion testimony is inadmissible because it is based on speculation.[14] Tesoro's argument fails based on our above review of the facts that underpin Dr. Haber's opinion. Tesoro correctly asserts that an expert's opinion must be based on fact and not on a mere conclusion or assumption. Volk v. DeMeerleer, 187

---

[14] Tesoro also argues that Dr. Longo's testimony is inadmissible because it is based on speculation. Unlike Dr. Haber's testimony, Tesoro did not raise an objection to Dr. Longo's testimony below. Therefore, the challenge to the admissibility of Dr. Longo's testimony for the purpose of summary judgment is waived. RAP 2.5(a).

Wn.2d 241, 277, 386 P.3d 254 (2016); see ER 702. "[S]peculation and conclusory statements will not preclude summary judgment." Id. The concern regarding speculative testimony is that the jury or factfinder will be forced to surmise as to causation without a sufficient factual basis. Id. Importantly, "admission hinges on the expert's basis for forming the opinion, not on the expert's conclusions." Id. An expert's opinion must be grounded in facts in the record to not be overly speculative and inadmissible. Id. Here, Dr. Haber's testimony is based on reasonable inferences drawn from the facts in favor of the estate as the nonmoving party. Dr. Haber's opinion is thus grounded in the record and not speculative.

The cases that Tesoro cites to support its argument are inapposite. In respect to the substantial factor test, in Sharp v. Fairbanks N. Star Borough, 569 P.2d at 183-84, the Alaska Supreme Court held that no reasonable person could regard the Borough school district's failure to supervise student Sharp at a wrestling tournament as a legal cause of Sharp's injury. In Sharp, another student's mother transported Sharp and her son away from the tournament site. Id. at 180, 182. After the mother stopped and instructed the boys to refuel the vehicle, her son intentionally ignited a fuel spot on Sharp's clothing. Id. The court held that to attach responsibility to the district in such a context would place the district in the position of insurer "unless it imposed regulatory measures designed to thwart the everyday practices of its students and their families." Id. at 182. In the instant case, Tesoro does not argue that, assuming there was otherwise adequate evidentiary support, it would be unreasonable as a matter of law for such exposure to be regarded as a substantial factor in the development of Moore's mesothelioma as to hold Tesoro liable. Therefore, Sharp is not instructive to the issues

18

before us.

Additionally, Tesoro cites <u>Alvey v. Pioneer Oilfield Servs.</u>, 648 P.2d 599, 600-01 (Alaska 1982), for the rule that the mere fact that an injury occurred is not sufficient to establish that defendant's negligent conduct was a substantial factor in bringing about a plaintiff's harm. In <u>Alvey</u>, there were no facts to show that Pioneer's design or construction of a well cover contributed to Alvey's injuries after he picked up the well cover and, unaware that it protected a survey hole, fell into an open well. <u>Id.</u> at 600. Alvey conceded nothing in the cover's design or construction caused his fall. <u>Id.</u> at 601. The complete dearth of evidence in <u>Alvey</u> is not comparable to the instant case, where the estate offered expert testimony that Moore's exposure to asbestos dust during his work on the refinery's hydrocracker was a substantial factor in the development of his mesothelioma.

Lastly, Tesoro's attempt to distinguish the Alaska Supreme Court's holding in <u>Peek v. SKW/Clinton</u> is not well-taken. 855 P.2d 415 (Alaska 1993). In <u>Peek</u>, the court held that experts' opinions adequately established that Peek's asbestos exposure at his last employer was a substantial factor in the development of his mesothelioma disease. <u>Id.</u> at 419. One expert testified that Peek's exposure at both of his relevant worksites "was a substantial additive factor to the fiber burden that increased the risk of mesothelioma," particularly if asbestos was "like snow" as Peek's co-workers testified. <u>Id.</u> (internal quotation marks omitted). Another expert testified that any additional cumulative dose increases the risk of developing mesothelioma and "'any exposure within a reasonable latency period could be a substantial contributing factor.'" <u>Id.</u> at 419 & n.8.

Tesoro argues that unlike the experts' opinions in Peek, the estate's experts in the instant case relied on the incorrect assumption of Moore's exposure at the refinery rather than co-worker testimony. Tesoro provides no authority to support its assertion that asbestos exposure must be established by co-worker testimony. Peek does not stand for that proposition. Indeed, Peek's exposure to asbestos was undisputed. Id. at 419. As we discuss above, Moore's exposure is not an assumption but, construing the evidence in the estate's favor, a reasonable inference drawn from the fact that Tesoro ordered insulators to primarily use asbestos insulation during the time Moore worked at the refinery and was exposed to insulation dust.

We conclude the issues of whether Moore was exposed to asbestos at the refinery and whether such exposure was a substantial factor in the development of his mesothelioma remain factual questions that should be decided by a jury.

### Duty[15]

As stated above, a viable negligence claim requires a plaintiff to show a duty of care, breach of that duty, causation, and harm. Silvers v. Silvers, 999 P.2d 786, 793 (Alaska 2000). The issues of whether a defendant owed a duty of care and the nature or scope of such a duty are questions of law that we review de novo. Lindsey, 241 P.3d at 885; Est. of Mickelsen v. N.-Wend Foods, Inc., 274 P.3d 1193, 1197 (Alaska 2012). "[W]e us[e] our independent judgment to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." Id. Whether the defendant breached their duty of

---

[15] The trial court limited its summary judgment order in favor of Tesoro to the issue of causation. Because we review a challenge to summary judgment de novo and conduct the same inquiry as the trial court, we address the estate's additional assignments of error to issues raised and briefed below. Keck, 181 Wn. App. at 78; see Postema v. Postema Enterprises, Inc., 118 Wn. App. 185, 193, 72 P.3d 1122 (2003); RAP 9.12.

care is typically a question for the jury. State v. Guinn, 555 P.2d 530, 534 (Alaska 1976).

The estate contends that Tesoro owed a duty to Moore under a premises owner theory of liability.[16] We hold that Tesoro owed a duty to Moore based on its control over relevant contracted work on its premises where Moore was allegedly exposed to asbestos dust. The inquiries as to whether Tesoro breached its duty as a premises owner remain a question for the jury.

Generally, the duty of care or ordinary care is the duty to act with the amount of care that a reasonably prudent person would use under similar circumstances. Leigh v. Lundquist, 540 P.2d 492, 494 (Alaska 1975). The Alaska Supreme Court has held that in a situation where a defendant is a premises owner, general contractor, or the employer of an independent contractor, the defendant owes a duty of care to the independent contractor's employees to avoid endangering them by the defendant's own negligent conduct. Moloso v. State, 644 P.2d 205, 210 (1982); Sloan v. Atl. Richfield Co., 552 P.2d 157, 160 (Alaska 1976). This reflects the "simple rule that anyone, including an employer of an independent contractor, may be held liable for his or her own negligence." Moloso, 644 P.2d at 211 n.5. "[W]here an employer, owner, or general

---

[16] The estate also argues on appeal that Tesoro owed a duty to Moore under a separate landowner theory of liability. See Schumacher v. City & Borough of Yakutat, 946 P.2d 1255, 1258 (Alaska 1997); Burnett v. Covell, 191 P.3d 985, 989 (Alaska 2008). However, because Tesoro did not provide argument at summary judgment against its duty as a landowner as a matter of law, we do not address it in considering the trial court's summary judgment order. See Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co., 19 Wn. App. 2d 210, 221, 494 P.3d 450 (2021) ("Our scope of review is limited to evidence and issues called to the attention of the trial court before the order on summary judgment was entered.") (citing RAP 9.12); see also RAP 2.5(a); State v. Lazcano, 188 Wn. App. 338, 356, 354 P.3d 233 (2015) (stating that for an error to be raised before the trial court, the issue must have been adequately argued so as to "afford[ ] the trial court an opportunity to rule correctly on a matter before it can be presented on appeal").

contractor 'is independently responsible, as by a failure to prudently exercise controls retained over the details of performing the work at the jobsite, or by a failure to turn over premises free of unreasonable safety hazards, we will allow suit by the employee of the independent contractor.'" Hammond v. Bechtel Inc., 606 P.2d 1269, 1274 (Alaska 1980) (quoting Sloan, 552 P.2d at 160). Under such a theory, the defendant may be held liable for the injury of an independent contractor's employee that is caused by another independent contractor or subcontractor's[17] employee. See Parker Drilling Co. v. O'Neill, 674 P.2d 770, 774-76 (Alaska 1983).

This independent duty is derived from section 414 of the Restatement (Second) of Torts (1965), which was expressly adopted by the Alaska Supreme Court in Hobbs v. Mobil Oil Corp., 445 P.2d 933, 934 (Alaska 1968); see Hammond, 606 P.2d at 1274. Section 414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS (1965) (emphasis added). In other words, if a defendant retained sufficient control over an independent contractor's work, then the defendant is liable for all harmful consequences caused by its own unreasonable exercise of such control. See Everette v. Alyeska Pipeline Serv. Co., 614 P.2d 1341, 1347 (Alaska 1980); Moloso, 644 P.2d at 211.

Ultimately, based on its examination of this duty under section 414, the Alaska

---

[17] Any duty owed by the premises owner, employer, or general contractor under this theory is unaffected by the titles of "subcontractor" or "independent contractor." Moloso, 644 P.2d at 211 n.4.

Supreme Court held "there is a common law duty to provide a safe worksite running to whomever supplies and controls that worksite" that "protects <u>all</u> workers on the site and not just the employees of the defendant." <u>Parker Drilling Co.</u>, 674 P.2d at 774-76 (emphasis added). The court held this duty is not dependent upon the existence of any particular combination of contractual relationships. <u>Id.</u> at 776. Whether a party exerted sufficient control over the jobsite is a question typically left to the jury. <u>Id.</u> Contractual provisions and the actual exercise of control are both relevant in determining whether the nature and extent of the control present are sufficient to impose liability. <u>Moloso</u>, 644 P.2d at 211.

The Alaska Supreme Court also has held that if the defendant retained the right to direct the manner of the independent contractor's performance or assumed affirmative duties in respect to safety, then the defendant has retained sufficient control to be held liable if such control is exercised negligently. <u>Id.</u> It is likely not sufficient to establish a duty if the defendant reserves only the general right to order the pace of the work, inspect its progress, or receive reports. <u>Everette</u>, 614 P.2d at 1347. Conversely, if the defendant retained the right to direct the manner of the independent contractor's performance or superintend the work in any significant way, the defendant has retained sufficient control to be liable for any resultant harm. <u>Id.</u> This is in contrast to the defendant merely making suggestions or recommending modifications. <u>See id.</u> at 1347 & n.7 (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (Am. L. Inst. 1965)).[18]

---

[18] Comment c to section 414 of the <u>Restatement (Second) of Torts</u> (1965) states:

> c. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make

Here, the estate presented evidence to support a jury's reasonable inference that Tesoro maintained sufficient control over Moore's jobsite to make it liable for its alleged negligent exercise of such control that caused Moore's harm by allowing him to be exposed to asbestos dust. Moore testified he worked for a company contracted with Tesoro. In addition to testifying to his coworkers installing and removing installation above him that created asbestos dust, Moore testified that Tesoro employees monitored his jobsite to make sure work was being "done the way it's supposed to be done." Moore also testified that Tesoro would fire contractors if they did not follow safety rules. Nonetheless, Moore testified no efforts were made to protect him from the insulation, and he was unaware of any warnings provided about asbestos hazards at the refinery.

Moreover, even if the insulation was being installed or removed by employees of a different independent contractor, evidence indicates the control that Tesoro maintained over the use of asbestos insulation throughout the refinery. Endsley testified he worked for Inlet Insulation Company during the same period Moore worked at the refinery. Inlet was contracted to perform maintenance work at the refinery. Endsley testified Tesoro told the Inlet employees where insulation needed to be installed or repaired, and that the employees should use the asbestos insulation stored at the refinery first before ordering any new materials. Endsley also testified Tesoro would tell Inlet employees where to get asbestos insulation and to let Tesoro know if a job required a different size than what could be found in the stored supply so that new

suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

24

insulation could be ordered.

In its response brief, Tesoro misplaces the estate's purported duty as existing between Tesoro and the independent contractor that employed Moore. Tesoro does not address its alleged duty to exercise reasonable care to the employee of an independent contractor working on its premises. Nor does Tesoro address the estate's argument that a jury could reasonably infer Tesoro breached its duty of reasonable care by instructing the use of asbestos insulation in violation of federal regulations and allowing Moore to be exposed to its dust while working on its premises.

If a party opposing summary judgment sets forth facts showing it can produce admissible evidence demonstrating a triable issue of fact exists, then the question of breach should go to the jury. Burnett v. Covell, 191 P.3d 985, 991 (Alaska 2008). Summary judgment is appropriate where the inquiry is specific to whether the defendant owed a duty, but summary judgment on the subject of duty is disfavored where the question is one of "'the precise scope of that duty, or of whether particular conduct did or did not breach it.'" Winschel, 171 P.3d at 146 (quoting Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell, 956 P.2d 1199, 1203-04 (Alaska 1998)). Accordingly, we conclude that the estate presented evidence to reasonably establish that Tesoro owed a duty to Moore as a premises owner and that the factual question as to whether Tesoro breached its duty should go to the jury.

## Statute of Repose

Under Alaska's statute of repose, AS 09.10.055, a person generally may not bring an action for personal injury, death, or property damage after 10 years from the date of the last act that caused the harm. AS 09.10.055(a)(2). Exceptions to the rule

25

include claims for personal injury, death, or property damage caused by "(B) an intentional act or gross negligence" or "(E) a defective product." AS.09.10.055(b)(1)(B), (E). The estate does not dispute that Moore's development of mesothelioma occurred more than 10 years after his work at the refinery in 1980 and 1981. Rather, the estate contends that the evidence establishes questions of fact as to whether Tesoro's alleged negligent conduct satisfies either the gross negligence or defective product exception. We agree.

## A. Gross Negligence

To meet the standard for the Alaska statute of repose's gross negligence exception, the defendant's conduct must have been "a 'major departure from the standard of care.'" Dapo v. State, 454 P.3d 171, 178 (Alaska 2019) (quoting Maness v. Daily, 307 P.3d 894, 905 (Alaska 2013)). A mere failure to exercise reasonable care is not sufficient. Id. The Alaska civil pattern jury instruction defines gross negligence as "'an extreme departure from [the reasonably careful person] standard,' and 'more than ordinary inadvertence or inattention, but less than conscious indifference to consequences.'" City of Hooper Bay v. Bunyan, 359 P.3d 972, 982 n.50 (Alaska 2015) (quoting ALASKA PATTERN JURY INSTRUCTIONS: CIVIL 3.14 (2008) (APJI) (alteration in original), https://courts.alaska.gov/CVPJI/index.htm#3).[19] Whether the defendant's lack

---

[19] The Alaska civil pattern jury instruction 3.14 states in full:
I will now define gross negligence for you.
First you must understand what ordinary negligence means. Negligence is the failure to use reasonable care, which is the amount of care a reasonably careful person would use in the same situation. Gross negligence is an extreme departure from this standard. Gross negligence means more than ordinary inadvertence or inattention, but less than conscious indifference to consequences.
APJI 3.14; see also id. cmt. (stating the instruction is based on Storrs v. Lutheran Hosp. & Homes Society, Inc., 661 P.2d 632, 634 n.1 (Alaska 1983)).

of care constitutes gross negligence is ordinarily a question of fact for the jury. Dapo, 454 P.3d at 178.

The parties do not cite, and we have not located, a single Alaska case where an asbestos exposure claim satisfied the gross negligence exception under AS 09.10.055. Both parties, however, cite to this court's unpublished decision in Hoffman v. Ketchikan Pulp Co., No. 51162-2-II, slip op. at 18 (Wash. Ct. App. Aug. 20, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051162-2-II%20Unpublished%20Opinion.pdf,[20] wherein we held that Hoffman's claim did not satisfy the gross negligence standard under Alaska's statute of repose. Tesoro argues that the estate's arguments "are far more tenuous than those that" this court found inadequate in Hoffman. We disagree.

The claim at issue in Hoffman was regarding take-home asbestos exposure. Id. at 1-3, 6. Doyle Hoffman, worked as a welder and pipefitter at the Ketchikan pulp mill in Alaska between 1954 and 1966. Id. at 3. As a result of his job removing asbestos insulation, his clothing was often covered with asbestos dust at the end of his shift that he then continued to wear after he arrived home and interacted with his family. Id. Hoffman's son sued Ketchikan Pulp Company (Ketchikan), claiming his mesothelioma stemmed from his childhood asbestos exposure caused by Ketchikan's negligence. Id. at 4. In this court's determination that the evidence did not establish a genuine issue of material fact as to whether Ketchikan's gross negligence excepted the claim from

---

[20] Although Alaska law applies to this appeal's substantive questions, this does not foreclose our consideration of Washington case law as persuasive authority, particularly where, as here, a Washington opinion applies Alaska law. Additionally, parties may cite this court's unpublished opinions filed on or after March 1, 2013 as persuasive authority. GR 14.1(a). This court may cite and discuss unpublished opinions when necessary for a reasoned decision. GR 14.1(c).

Alaska's statute of repose, we observed that regulations were not promulgated specific to take-home asbestos exposure until after the father worked at the Ketchikan mill. Id. at 17. There was otherwise no evidence as to what was generally known in Alaska as to take-home exposure at the time the father worked at the mill. Id. at 16-18. An expert witness' testimony showed that the risks of take-home exposure were still disputed at that time. Id. at 16-17.

We explained, "While [the son] may not have been required to show that [the pulp mill] knew of the specific danger of take-home exposure, he did have to show at least 'more than ordinary inadvertence or inattention.'" Id. at 17. Accordingly, we held, "[t]he lack of evidence of what Ketchikan knew, combined with the lack of even expert agreement about the risks of take-home exposure at the time" supported the trial court's ruling that the gross negligence exception did not preserve the son's claim on summary judgment. Id. at 17-18.

In stark contrast in the instant matter, viewing the evidence in a light most favorable to the non-moving party, the estate presented evidence that irrespective of the EPA's ban on asbestos pipe and block insulation starting in 1975, Tesoro instructed maintenance workers at the refinery to use stored asbestos insulation prior to ordering any new material during the time the hydrocracker was in production and during Moore's work at the refinery in the early 1980s. Generally, a defendant is presumed to know the law. See Hutton v. Realty Executives, Inc., 14 P.3d 977, 980 (Alaska 2000); Ferrell v. Baxter, 484 P.2d 250, 264-65 (Alaska 1971). Moore described the insulation used above him as being installed on the hydrocracker and removed from piping on the hydrocracker, which created dust for Moore as he performed his work below on the

28

ground. Moore's testimony further supports the estate's assertion that his exposure to asbestos dust was unmitigated. Tesoro otherwise concedes that disturbed asbestos materials that release breathable fibers pose a health risk. Rosin's testimony supports the reasonable inference that Tesoro's alleged failure to protect Moore from such exposure to asbestos would be a major departure from a reasonable standard of care.

We conclude that the estate has presented evidence to create a genuine dispute of material fact as to whether Tesoro's alleged gross negligence is exempt from Alaska's statue of repose. The issue of whether Tesoro's conduct constitutes gross negligence remains a question of fact for the jury.

B. *Defective Product*

The estate asserts that a jury could reasonably find that the asbestos insulation that Moore was purportedly exposed to at the Tesoro refinery legally constitutes a defective product. Accordingly, the estate argues that its claim is exempted from Alaska's statute of repose under the defective product exception.

In response, Tesoro asserts the estate attempts to convert Tesoro into a products liability defendant "by fiat." Tesoro avers this attempt fails because the estate does not establish "that Tesoro or its predecessor placed any asbestos-containing pipe insulation into the stream of commerce to which Moore was exposed." Tesoro cites Burnett v. Covell, 191 P.3d at 988, wherein the Alaska Supreme Court stated that it has not extended strict products liability beyond defendants "who place a product into the stream of commerce." Specifically, Tesoro again claims that the estate failed to identify that Moore was exposed to asbestos insulation during his work on the hydrocracker.

Interpretation of a statute is a question of law that is reviewed de novo to which

we apply our independent judgment in light of reason, practicality, and common sense. Jones v. Bowie Indus., Inc., 282 P.3d 316, 337 (Alaska 2012). We consider the meaning of the statute's language, its legislative history, and its purpose. Id. "[T]he clearer the statutory language, the more convincing any contrary legislative history must be to overcome the statute's plain meaning." Se. Alaska Conserv. Council, Inc. v. Dep't of Nat. Res., 470 P.3d 129, 141 (Alaska 2020).

Under AS 09.10.055(b)(1)(E), the 10-year statute of repose does not apply if the plaintiff's personal injury, death, or property damage resulted from a defective product. "'[P]roduct' means an object that has intrinsic value, is capable of delivery as an assembled whole or as a component part, and is introduced into trade or commerce." AS 09.10.055(b)(1)(E).

In Jones v. Bowie Indus., Inc., 282 P.3d at 338, the Alaska Supreme Court held that the defective product exception to the 10-year statute of repose is not limited to strict product liability claims. Jones' leg was amputated by a machine used to seed and fertilize land. Id. at 321-22. Jones sued the manufacturer Bowie Industries, alleging strict liability for defective design of the machine, negligent design of the machine, and negligence in failing to warn of the dangers in using the machine. Id. at 322. Jones also sued Great Alaska Lawn and Landscaping, Inc. (Alaska Lawn) for negligently providing unsafe equipment to Jones' employer and failing to warn Jones and his employer about the dangers in using the machine.[21] Id.

Bowie contended that only Jones' strict products liability claim falls under the defective product exception of the 10-year statute of repose, thus extinguishing Jones'

---

[21] Alaska Lawn loaned the equipment to Jones' employer for its use at no charge. Jones, 282 P.3d at 322, 333-34.

negligence claims. Id. at 337. Considering the statutory language, common law, and legislative history, the Alaska Supreme Court rejected Bowie's contention that the term "defective product" used in AS 09.10.055(b)(1)(E) is a term of art that specifically refers to strict products liability and affirmed the trial court's decision that the statute of repose did not extinguish Jones' negligence claims. Jones, 282 P.3d at 337-38, 340. The court observed that the legislature defined "product" as pertaining "to the tangible thing that causes an injury, not to the legal theory that a plaintiff might use to recover for the injury." Id. at 338 (emphasis added). The court stated that a plaintiff injured by a defective product may bring negligence suits in addition to a strict products liability claim. Id. On balance, "AS 09.10.055(b)(1)(E) contains an express exception to the statute of repose for injuries resulting from defective products" but it "does not distinguish between different theories of recovery for those injuries." Jones, 282 P.3d at 338 (emphasis added). We thus reject the premise of Tesoro's argument that the estate must stand up a strict product liability claim for the defective product exception to apply under AS 09.10.055(b)(1)(E).

Moreover, we observe the plain language of AS 09.10.055(b)(1)(E) does not state that to be a "product" under the exception, the defendant must have placed the object into the "stream of commerce" as Tesoro seems to suggest in its brief. Tesoro offers no additional authority to establish that asbestos insulation is not a product as defined by AS 09.10.055(b)(1)(E). See RAP 10.3(b).

The Alaska Supreme Court has limited strict products liability claims to defendants "who place a product into the stream of commerce." Burnett, 191 P.3d at 988. This category consists of "sellers, manufacturers, wholesale or retail dealers and

31

distributors." Id. at 987-88. The legislature did not specify, however, that the product need be "introduced into trade or commerce" by the defendant to meet the exception under AS 09.10.055(b)(1)(E).[22] To require such is inconsistent with the Jones court's observation that the statutory language is not focused on a specific liability framework, but whether the plaintiff's injury resulted from a defective product. See 282 P.3d at 338. Applying Alaska law, we must presume the legislature intended every word purposefully and, therefore, that a "difference in language must have some significance." Tesoro Alaska Petro. Co. v. Kenai Pipe Line Co., 746 P.2d 896, 906 (Alaska 1987).

Moreover, contrary to the Jones court's broad interpretation of AS 09.10.055(b)(1)(E), because of the long latency period of asbestosis, a requirement that the defendant be the manufacturer or seller of the product risks hindering an injured plaintiff's practical ability to bring a negligence claim under the defective product exception. A plaintiff who did not work directly with an asbestos product may be unable to personally identify its manufacturer or seller. Lockwood v. AC & S, Inc., 109 Wn.2d 235, 246, 744 P.2d 605 (1987). Problems of identification multiply when the plaintiff has been potentially exposed to asbestos at more than one jobsite. Id. To restrict a plaintiff from bringing a negligence action for an asbestos-caused injury cuts against the legislature's intent for the defective product exception to be one of the biggest exceptions to the statute of repose. See Jones, 282 P.3d at 338. As the Jones court observed, the legislation's sponsor did not express any intent to exclude certain negligence actions from the defective product exception. Id.

---

[22] This presumes "introduced into trade or commerce" means sold or manufactured. Tesoro provides no authority to support this premise other than assuming the phrase is substantively equivalent to "stream of commerce." Even assuming this, we disagree with Tesoro's challenge on its merits.

Based on these considerations, we are unpersuaded by Tesoro's suggestion that it must have sold or manufactured the asbestos insulation for the defective product exception to apply. We hold the "product" definition under AS 09.10.055(b)(1)(E) encompasses the asbestos insulation stored and supplied by Tesoro that allegedly caused Moore's mesothelioma illness.

Lastly, what makes a product "defective" is not defined as it pertains to the exception to the 10-year statute of repose. See AS 09.10.055(b)(1)(E). Because Tesoro does not contest that a jury could reasonably find that asbestos insulation is defective under the statute, we do not address it further. We thus conclude that questions of fact remain for the jury as to whether Moore's harm resulted from his exposure to asbestos-containing insulation and whether the asbestos insulation is defective under AS 09.10.055(b)(1)(E).

## CONCLUSION

Because questions of fact remain as to whether Moore's exposure to asbestos at the refinery caused his illness, whether Tesoro breached a duty of care to Moore, and whether the estate's claim is excepted from Alaska's 10-year statute of repose, we reverse the trial court's order of summary judgment and remand for trial.

_____
Coburn, J.

WE CONCUR:

_____        _____
Feldman, J.                      Mann, J.

33